Marc MARLOW, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE, and Carr–Gottstein Properties, Inc., Appellees.**

No. S–5986.

Supreme Court of Alaska.

Feb. 10, 1995.

Rehearing Denied March 9, 1995.

Margaret J. Rawitz, Hoge & Lekisch, Anchorage, for appellant.

Leslie K. Schumacher, Scott A. Brandt-Erichsen, Asst. Municipal Attys., Richard L. McVeigh, Municipal Atty., Anchorage, for appellee Municipality of Anchorage.

John C. McCarron, Mark E. Ashburn, Donald W. McClintock, Ashburn & Mason, Anchorage, for appellee Carr–Gottstein Properties, Inc.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

MATTHEWS, Justice.

Seeking to develop a cooperative senior citizen housing project on Tract 6 of the Arnold L. Muldoon Subdivision, appellant Marc Marlow petitioned the Anchorage Municipal Assembly to have the tract rezoned to accommodate his development plans. The Assembly passed an ordinance which rezoned Marlow's property to a zoning classification compatible with Marlow's proposed project. The ordinance contains the following provision:

*Section 3.d.* Prior to the application for a building permit, a public hearing site plan

review shall be conducted by the Planning and Zoning Commission. Included in the review will be a Traffic impact [sic] Analysis which will specifically address ingress and egree [sic] points, drainage study, wetlands determination, utility easements, extensions and construction requirements and all of the items required under AMC Section 21.15.030. The Commission shall approve the site plan prior to the issuance of any building permits.

Pursuant to this provision, Marlow presented a site plan for the first phase of his project to the Planning and Zoning Commission. A public hearing was conducted on this site plan. At the public hearing, Paul Carr testified on behalf of Carr–Gottstein Properties, Inc., the owner of an adjacent tract. Carr stated that while he had no objection to the project, he had reviewed the site plan and "did not see any utility extension or even if it's accommodated." Referring to the limitation in the ordinance requiring review of "utility easements, extensions and construction requirements," Carr stated: "I'm not able to identify any of those things, nor did we receive any comment or call or solicitation of where we might go with that from Mr. Marlow." Carr summarized his position as follows:

> Our concern, as stated under the original Planning and Zoning Commission hearing is that we're not opposed to the rezoning, nor are we opposed to the project, simply that a tract of land of this size would not be developed under the existing zoning without subdivision; and during that subdivision process, there would be a normal extension of utilities and utility easements. That's all we're asking for is that the utility extensions be considered as they would for us or any other developer.

A representative of Marlow responded to Carr's statement as follows: "I wanted to respond to Paul's statement and apologize for any lack of coordination. It is our intent to work out the issues of water and sewer (acquisition) (indistinguishable). We are finalizing the location of water and sewer and we will (indistinguishable)."

Following the public hearing, the Planning and Zoning Commission granted final approval to the site plan subject to a number of conditions. The resolution granting such approval contained a finding of fact regarding utilities, stating:

> The petitioner will work with [Carr–Gottstein] with regard to extension of utilities. The site slopes approximately 70 feet from east to west and if access for utilities is restricted to the area of encroachment it might cause problems for [Carr–Gottstein]. The Commission agreed that the final location of the utility easement will be left to [Marlow] and [Carr–Gottstein] so long as there is minimal disturbance in the greenbelt vegetation.

Dissatisfied with the Planning Commission's failure to issue a more specific ruling concerning extension of utilities, Carr–Gottstein appealed the Planning Commission's approval of the site plan to the Board of Adjustment (the Board) pursuant to AMC 21.30.010–.100. The Board granted the appeal and ruled that utilities must be extended to the boundary of Carr–Gottstein's property. In its ruling, the Board made the following conclusions:

1. The special limitations [in the ordinance] specify the Planning and Zoning Commission must examine utility easements, extensions and construction requirements in conjunction with the site plan review. The evidence in the record demonstrates the Commission failed to adequately examine these issues.

2. The record demonstrates the Commission delegated its responsibility for utility easements, extensions and construction to Appellee Marlow contrary to the requirements of the rezoning special limitations.

3. The record from the deliberations of the Assembly concerning the construction of utilities across Tract 6 [Marlow's property] to Tract 5 [Carr–Gottstein's property] clearly shows the Assembly directed the utility extensions and construction as part of the rezoning and appellee Marlow agreed to the requirement.

The Board decreed: "[T]he appeal in the above captioned case is granted and utilities must be extended to the property line of Tract 5 [Carr–Gottstein's property] consistent with AWWU design regulations."

Marlow appealed the Board's decision to the superior court, which affirmed the Board's decision. Marlow now appeals to this court.

■ Marlow argues on appeal that the Board incorrectly interpreted the rezoning ordinance to require the extension of utilities to Carr–Gottstein's property line. He also contends that the Board erred in concluding that the Planning Commission improperly delegated its responsibility to review utility easements, extensions, and construction to Marlow. We conclude that the Board erred in construing the rezoning ordinance to require the extension of utilities, but that the Planning Commission failed to review utility easements, extensions, and construction as required by the rezoning ordinance.[1]

1. *The rezoning ordinance does not require extension of utilities.*

■ The literal language of the rezoning ordinance requires the Planning and Zoning Commission to conduct a site plan review at a public hearing. The review must include "utility easements, extensions and construction requirements...." The language of the ordinance does not require that any particular utility easements be placed on the land or that any particular utility extensions be built. Marlow argues that the rezoning ordinance means only what it says and does not contain an implied requirement that utilities be extended to Carr–Gottstein's property. Carr–Gottstein, on the other hand, argues that the ordinance can reasonably be interpreted to require extension of utilities to its property.

■ In interpreting a statute or an ordinance, our goal is to give effect to the intent of the law-making body "with due regard for the meaning that the language in the provision conveys to others." *Foreman v. Anchorage Equal Rights Comm'n*, 779 P.2d 1199, 1201 (Alaska 1989) (citing *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982)). In an effort to meet this goal, we have "rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach." *Peninsula Marketing Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991). Under the sliding scale approach, the plainer the language of the statute, the more convincing contrary legislative history must be. *Id.; City of Homer v. Gangl*, 650 P.2d 396, 400 n. 4 (Alaska 1982).

Marlow is correct that the plain language of the ordinance does not mandate a particular result, such as extension of utilities to Carr–Gottstein's property. The legislative history available in this case is the Assembly's discussion at two public hearings held to consider Marlow's request to rezone his property. At the second hearing, Paul Carr, representing Carr–Gottstein Properties, proposed an amendment to the rezoning ordinance which would require the Commission to include in the site plan review "utility easements, extensions and construction requirements." Explaining the amendment, Carr expressed two concerns. His first concern involved the size and capability of utilities. He stated:

> [I]n relation to the utility requirements ... we do not [know] if those utilities are properly sized to handle ... all of the developments that would normally occur down Muldoon Road. We don't feel that we or other property owners should bear the brunt of upgrades or anything else that might occur at the rezoning by an increased density or change in use for fire flow (indiscernible) such a large building that you would not normally have in houses or anything else.

Carr's second concern involved extension of utilities to his property, Tract 5. With respect to extension, Carr stated:

> We do not feel we should have to pay for *easements* that would normally be extended to our property: drainage, storm sewer, water, or other easements. Those *easements* should be there. If during the nor-

---

1. Since the issues we address in this appeal are pure questions of statutory construction which do not involve agency expertise, we apply the independent judgment standard of review. *See Cook Inlet Pipe Line Co. v. Alaska Pub. Util. Comm'n*, 836 P.2d 343, 348 (Alaska 1992).

mal subdivision process, you would extend those utilities to the adjoining property, that's what should be done.

(Emphasis added.)

Assembly member Wood attempted to clarify Carr's position and asked whether the *easements* he was requesting would service his property. Carr responded that they would. He did not correct Wood's statement by pointing out that he was requesting easements and extensions.

Throughout the hearing Marlow stated that he did not consent to extending utilities to Tract 5 and that he did not think he or his future clients should have to pay to extend utilities to Tract 5. He did, however, consent to Carr's proposed amendment requiring the Planning Commission to include the utilities issue in the site plan review.

■ Although the hearing transcript indicates that the Assembly considered Carr's concerns regarding utility easements and extensions, it is not clear how the Assembly intended to resolve the issues raised. During discussion, the Assembly and Carr failed to distinguish between utility easements and extensions. Thus, it is unclear whether the Assembly actually understood Carr's request

and what it intended Marlow to do with respect to utilities. No member of the Assembly actually expressed an intent to require Marlow to pay to extend utilities to Tract 5. Furthermore, Carr raised several different concerns with respect to utilities, including the size and capability of utilities, the location of utility easements, and the extension of utilities to Tract 5. Thus, it is not apparent from the hearing transcript that the amendment was intended to require Marlow to extend utilities to the adjoining tract.[2]

Neither the legislative history nor the language of the ordinance support the Board's interpretation of the ordinance as requiring the Planning and Zoning Commission to decline to approve a site plan not providing for extension of utilities to Carr–Gottstein's property. The Board erred by ruling that Marlow must extend utilities to Tract 5.

### 2. *The Commission failed to properly review utility issues.*

■ Under the ordinance, the Planning and Zoning Commission was required to review utility easements, extensions, and construction requirements at a public hearing.[3]

---

2. The only indication that the Assembly intended Marlow to extend utilities to Tract 5 is a set of statements made by some of the Assembly members at the appeal before the Board. Not only do these statements fail to prove that the Assembly intended Marlow to extend utilities to Tract 5, but they are irrelevant to our determination of the meaning of the ordinance, as we will not consider the subsequent testimony of a legislator detailing his or her understanding of an act or the recollections of an individual legislator regarding the intent of the body. *See State, Dep't of Community & Regional Affairs v. Sisters of Providence*, 752 P.2d 1012 (Alaska 1988) (holding that letter written by senator three years after legislative debate adds nothing to the legislative history); *Lynden Transp., Inc. v. State*, 532 P.2d 700, 716 (Alaska 1975) (testimony by legislator excluded); *Alaska Pub. Emps. Ass'n. v. State*, 525 P.2d 12, 16 (Alaska 1974); *see also Cook Inlet Native Ass'n v. Bowen*, 810 F.2d 1471, 1475 (9th Cir.1987) (statements of a former legislator after a bill's passage are entitled to no weight); 2A Norman J. Singer, *Sutherland Statutory Construction* § 48.16 at 365–68 (5th ed. 1992) & § 48.03 (5th ed. Supp.) (stating that later observations by those involved in legislation's creation are not considered when referring to legislative history).

3. The relevant part of the ordinance states:

> Prior to the application for a building permit, a public hearing site plan review shall be conducted by the Planning and Zoning Commission. *Included in the review will be a Traffic impact [sic] Analysis which will specifically address ingress and egree [sic] points, drainage study, wetlands determination, utility easements, extensions and construction requirements and all of the items required under AMC Section 21.15.030.* The Commission shall approve the site plan prior to the issuance of any building permits.

(Emphasis added.) Marlow argues that the emphasized sentence only required the Planning Commission to "address" utility easements and extensions, and that the Commission satisfied this requirement by finding that Marlow would work together with Carr–Gottstein on utility assessments and easements. Marlow apparently reads the emphasized sentence in the following way:

> Included in the review will be a Traffic Impact Analysis which will specifically address
> 1) ingress and egress points,
> 2) drainage study,
> 3) wetlands determination,
> 4) utility easements, extensions and construction requirements,

At the public hearing some discussion of these subjects took place but no decisions concerning the location of utility easements or construction of utility extensions were made. Instead, the Commission found that Marlow "will work" with Carr–Gottstein "with regard to extension of utilities" and that "the final location of the utility easement will be left to [Marlow] and [Carr–Gottstein]."

We assume that this finding was intended by the Commission to be a command to Marlow to attempt to reach an agreement with Carr–Gottstein concerning utility extensions and the location of utility easements. While this is a reasonable approach, it does not comply with the ordinance's requirement of a review of utility easements and extensions. Utility easements and extensions cannot be reviewed unless there is a specific proposal concerning them. As there was none in this case, the approval of the Planning and Zoning Commission was premature under the rezoning ordinance.

For the above reasons, the judgment of the superior court is REVERSED and this case is REMANDED to the superior court with instructions to vacate the Board's decision and the Planning and Zoning Commission's site plan approval and remand this case to the Planning and Zoning Commission for further proceedings consistent with this opinion.[4]

5) and all of the items required under AMC Section 21.15.030.

Marlow's reading cannot be correct. Marlow's reading would require a Traffic Impact Analysis which addresses factors such as drainage study and utility extensions. Drainage and utilities have no relationship to traffic. Only ingress and egress points are related to traffic. ("Ingress and egress points" refers to points where traffic may enter and exit the property.) The only sensible way to read the sentence is:

Included in the review will be

1) a Traffic Impact Analysis which will specifically address ingress and egress points,

2) drainage study,

3) wetlands determination,

4) utility easements, extensions and construction requirements,

5) and all of the items required under AMC Section 21.15.030.

Thus, the Planning and Zoning Commission was required to *review* utility easements and extensions.

4. Our disposition of this case moots the procedural and due process arguments presented by Marlow in this appeal.