**Phillip CHOKWAK, Appellant,**

v.

**Les WORLEY and Ron Worley, Appellees.**

**No. S–6353.**

Supreme Court of Alaska.

March 8, 1996.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellant.

Paul W. Waggoner, Law Offices of Paul Waggoner, Anchorage, for Appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## *OPINION*

MATTHEWS, Justice.

## I. *FACTS AND PROCEEDINGS*

Phillip Chokwak, a minor, became intoxicated at a party hosted by Les and Ron

Worley. The Worleys, ages 15 and 17, had furnished a keg of beer and a punch drink mixed with grain alcohol for their classmates at Wasilla High School. Approximately seventy-five to a hundred people attended the party. The Worleys did not limit the availability of alcohol to any of their underage guests, and did not restrain their intoxicated guests from driving. While driving from the party Chokwak was in an automobile accident in which he suffered permanent paralyzing injuries. He sued the Worleys for providing intoxicating liquor to him. The Worleys moved for summary judgment, claiming statutory immunity from civil liability under AS 04.21.020. Their motion was granted and judgment was entered in their favor.

Chokwak appeals. Two arguments are presented: first, that AS 04.21.020 does not grant civil immunity to social hosts who unlawfully provide liquor to minors; and second, that if the statute does grant civil immunity to hosts who unlawfully furnish liquor to minors, the statute so completely lacks rationality that it is unconstitutional.

## II. *DISCUSSION*

### A. *Does AS 04.21.020 Grant Civil Immunity to Social Hosts Who Provide Liquor to Minors?*

 We turn first to the statutory question. AS 04.21.020 provides:

A person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license authorized under AS 04.11.080–04.11.220, or is an agent or employee of such a licensee and

(1) the alcoholic beverages are provided to a person under the age of 21 years in violation of AS 04.16.051, unless the licensee, agent, or employee secures in good faith from the person a signed statement, liquor identification card, or driver's license meeting the requirements of AS

04.21.050(a) and (b), that indicates that the person is 21 years of age or older; or

(2) the alcoholic beverages are provided to a drunken person in violation of AS 04.16.030.

Although the phrase "a person who provides alcoholic beverages" is not limited to those who are licensed to provide alcoholic beverages, Chokwak argues that it should be construed to be so limited. He contends that the legislative history of section .020 indicates that it was aimed only at licensees. Further, he argues that reading the statute to apply to nonlicensees who unlawfully furnish liquor to minors reaches an absurd result which could not have been intended by the legislature because it lacks any rational basis and is against public policy. In reply, the Worleys argue that section .020 should be read literally and as so read it precludes a civil action against a nonlicensee for furnishing liquor to minors; that this court has in a number of cases indicated that section .020 immunizes social hosts from civil liability; and that social host immunity is a permissible legislative objective.

Chokwak's argument that the legislature intended section .020 to apply only to licensees is supported by some of the legislative history of the statute. Section .020 was enacted in 1980 as part of an act which comprehensively revised the Alaska Statutes pertaining to alcoholic beverages. Ch. 131, SLA1980. Section .020 was a new provision. *See* § 5, ch. 131, SLA1980. The section-by-section analysis of the act prepared by the Senate Judiciary Committee states the legislative intent of section .020 as follows:

It is the intent of this section that a licensee, his agent, or employee who lawfully furnishes an alcoholic beverage to a person who is 19 years of age or older, or a person who is not drunken, may not be held civilly liable for injuries resulting from the consumption of said alcoholic beverage by the above described persons or a third party.

Senate Journal Supp. No. 23 at 20, 1980 Senate Journal 643.

 In interpreting a statute the objective is to determine the intent of the legisla-

ture, with due regard for the meaning that the language employed in the statute conveys to others. *Marlow v. Municipality of Anchorage,* 889 P.2d 599, 602 (Alaska 1995). In the process of interpretation we have "rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach." *Peninsula Marketing Ass'n v. State,* 817 P.2d 917, 922 (Alaska 1991). Under the approach we use, the plainer the language of the statute, the more convincing contrary legislative history must be. *Marlow,* 889 P.2d at 602.[1]

The phrase "a person who provides alcoholic beverages" employed in section .020 is certainly broad enough to cover social hosts and other nonlicensee providers as well as licensees. On the other hand, the section-by-section analysis specifically limits, as a matter of legislative intent, the coverage of section .020 to licensees, indeed to licensees who "*lawfully* furnish alcohol to others." If the section-by-section analysis were the only legislative history available a close question would be presented as to whether it is sufficiently convincing to require that section .020 be interpreted to apply only to licensees. However, there is other legislative history which points to the conclusion that the legislature intended section .020 to apply to nonlicensees and thus weakens the impact of the section-by-section analysis.

The same legislature that passed the act containing section .020 also passed another act which was in substance identical to section .020. This act, House Committee Substitute for Committee Substitute for Senate Bill (HCS CSSB) 115 (Rules) (SB 115), would have added a new section, AS 09.65.097, to the Alaska Statutes, part (a) of which provided:

(a) A person who provides intoxicating liquor to an individual may not be held civilly liable for injuries resulting from the intoxication of that individual unless

(1) that person holds a license authorized under AS 04.10.020–04.10.146, or is an agent or employee of such a licensee; and

(2) the intoxicating liquor is provided to an individual under the age of 19 years in violation of AS 04.15.020(a), 04.15.060(d) or 04.15.080, unless the licensee, employee, or agent secures in good faith from the individual a signed statement, liquor identification card, or driver's license, meeting the requirements of AS 04.15.060(d), AS 18.65.310(a), or AS 04.15.065, respectively, and indicating that the individual is 19 years of age or older; or

(3) provides intoxicating liquor to an intoxicated person in violation of AS 04.15.020(a).

1. Our discussion in *State v. Alex,* 646 P.2d 203, 209 n. 4 (Alaska 1982), provides a fuller explanation for the method we have adopted:

The true issue in interpreting enacted law is the conflict between the meaning the enacting body intended and the meaning conveyed to others. 2A Sutherland, Statutory Construction § 48.02, at 18–5 (4th ed. 1973). The conflict is between what the sender meant and what the receiver understands. *Id.* § 45.08, at 22. The "plain meaning" rule has its basis in this conflict. Obviously, there are elements of unfairness where legislative intent is used to vary the apparent meaning of statutory words. *Id.* § 48.02, at 185–86. This has led some members of the judiciary to reject completely the consideration of legislative intent. Justice Holmes once remarked that "we do not inquire what the legislature meant; we ask only what the statute means." *Id.* § 45.07, at 20. On the other hand, most decisions speak in terms of legislative intent as if nothing else mattered in interpretation. *Id.*

Neither extreme expressed above provides a realistic and workable approach to the recon-

ciliation of the intent and meaning approaches to the interpretation of enacted law. Part of the problem stems from ambiguity being a relative concept. Words have no intrinsic meaning; what is clear to one person is ambiguous and obscure to another. *Id.* § 45.02, at 4–5. As one court stated: "We think the statute is plain on its face,. but since words are necessarily inexact and ambiguity is a relative concept, we now turn to the legislative history, mindful that the plainer the language, the more convincing contrary legislative history must be." *United States v. United States Steel Corp.,* 482 F.2d 439, 444 (7th Cir.), *cert. denied* 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973). In our recent decision of *State v. City of Haines,* 627 P.2d 1047, 1049 n. 6 (Alaska 1981), we interpreted *North Slope [Borough v. Sohio Petroleum Corp.,* 585 P.2d 534, 540 n. 7 (Alaska 1978)]* as having adopted just such a sliding scale approach as articulated in *United States Steel.*

HCS CSSB 115 (Rules), 11th Leg. 2nd Sess. (May 15, 1980).

On June 20, 1980, the Governor vetoed this act. His veto message is significant. It states:

> I have vetoed HCS CSSB 115 (Rules) (relating to the civil liability of providers of intoxicating liquor) inasmuch as the Department of Law has advised me that among other undesirable features it will significantly reduce the liability of those *illegally* dispensing alcohol as well as those dispensing it legally.

1980 Senate Journal 1744. Ten days later the Governor signed FC CSSB 239 which became chapter 131 SLA 1980. *See* 1980 Senate Journal 1753. Section 5 of this act became AS 04.21.020, which, as noted, contained language identical in substance to that of the vetoed HCS CSSB 115 (Rules).[2]

The Governor's veto message shows that in the view of the Governor and the Department of Law, SB 115 applied to nonlicensees. SB 115 did not reduce the liability of licensees dispensing alcohol illegally. However, if applied to nonlicensees it did reduce their liability, for no longer would they be civilly liable for giving liquor to an intoxicated person or minor.[3] Thus the veto message statement that SB 115 would significantly reduce the liability of those dispensing alcohol illegally only has meaning if the act applied to nonlicensees.

There is evidence that the legislature believed that SB 115 applied to nonlicensees. As originally introduced by Senator Ziegler, immunity for social hosts was its sole purpose.[4] The bill went through various metamorphoses. When it arrived at the House Rules Committee it provided in relevant part:

> *Sec. 2. AS 09.65 is amended by adding a new section to read:
>
> Sec. 09.65.097. LIMITATIONS ON THE CIVIL LIABILITY OF LAWFUL BEVERAGES PROVIDERS. (a) A person who provides an intoxicating liquor to an individual may not be held civilly liable for injuries resulting from the intoxication of that individual unless the intoxicating liquor is furnished to that individual in violation of a law prohibiting furnishing intoxicating liquor to a minor or an intoxicated person.

HCS CSSB 115 (Finance), 11th Leg., 1st Sess. (Apr. 29, 1979).

> BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF ALASKA:
> *Section 1. The legislature declares that the gratuitous social furnishing of alcoholic beverages to an individual may not be held to be the proximate cause of injuries sustained by that individual or inflicted by that individual on a third party.
> *Sec. 2. AS 09.65 is amended by adding a new section to read:
> Sec. 09.65.097. LIMITATIONS ON THE CIVIL LIABILITY OF GRATUITOUS BEVERAGE SERVERS. (a) A person who gratuitously furnishes an alcoholic beverage to an individual may not be held civilly liable for injuries resulting from the intoxication of that individual.
> (b) The protections of this section do not apply to a person licensed under the provisions of AS 04, or to an employee or agent of a person licensed under the provisions of AS 04, who gratuitously furnishes an alcoholic beverage on a premises licensed under AS 04.
> SB 115, 11th Leg. 1st Sess. (Feb. 7, 1979).

---

**2.** Section 13 of FC CSSB 239 repealed AS 09.65.097, added by HCS CSSB 115 (Rules), contingent upon the latter taking effect. § 17, FC CSSB 239. As 115 did not take effect because of the Governor's veto, neither did section 13. The legislative journals do not indicate the Governor's reasons for signing a bill into law with language nearly identical to that so recently vetoed. We will not speculate on his reasons for doing so.

**3.** Although this court had not ruled as of 1980 that one who provided liquor unlawfully could be civilly liable for injuries so caused, the United States District Court for the District of Alaska had so ruled, applying Alaska law, *Vance v. United States*, 355 F.Supp. 756 (D.Alaska 1973), and the Alaska Attorney General correctly opined that this court would so rule. Op. Att'y Gen., 4/2/79, J–66–569–79. We did so in *Nazareno v. Urie*, 638 P.2d 671 (Alaska 1981).

**4.** Senate Bill 115 as introduced by Senator Ziegler on February 7, 1979, provided:
> For an Act entitled: "An Act relating to the civil liability of gratuitous servers of alcoholic beverages."

Representative Cotten of the House Rules Committee wrote a memo soliciting comments on a proposed substitute bill which would clearly be limited only to licensees.[5] Senator Ziegler responded, voicing no objection to the proposal, but stating a preference for social host immunity:

What you propose to do to good old SB 115 meets with my approbation.

I only wish you could carry it one step further and provide protection for noncommercial purveyors like you and me when we pour in our homes.

However, protecting the owner/operator is a step in the right direction.

Letter from Senator Robert H. Ziegler, Sr., to Representative Samuel R. Cotten (March 10, 1980) (available in Senate Judiciary Committee files). Subsequently, the proposed substitute bill which applied solely to licensees referred to by Rep. Cotten was not adopted. Instead, the final version of SB 115 as passed by the legislature applied to "a person who provides."

This history tends to indicate that SB 115 as passed by the legislature was not meant to be limited to licensees. As section 5 (which became § .020) of SB 239 is nearly identical to SB 115, it is logical to believe that the legislature acted with a similar intent regarding that section.

The legislative history described above provides some evidence that the statement of legislative intent concerning section .020 in the section-by-section analysis is not fully inclusive. Because of this we do not find the section-by-section analysis to be sufficiently strong legislative history to require that the literal language of section .020 be narrowed by interpretation to apply only to licensees.

■ Chokwak's second statutory argument is, in essence, a harmonization argument. Relying primarily on *Haakanson v. Wakefield Seafoods, Inc.*, 600 P.2d 1087 (Alaska 1979), he argues that when a statute that bars a cause of action conflicts with the intent of another statute, the two should be read together in a way that preserves the intent of the second statute. In *Haakanson*, this court applied Alaska's general tolling statute for minors to an unmodified two-year limit on filing wrongful death claims in order to preserve the public policy that favors safeguarding the interests of minors. *Id.* at 1090. Chokwak argues that the court should similarly read AS 04.21.020 in light of the criminal prohibition on furnishing alcohol to minors in AS 04.16.051(a).[6] Thus, in order to preserve the public policy of protecting minors from the deleterious effects of alcohol, we should construe AS 04.21.020(a) not to apply to nonlicensees who furnish liquor to minors.

■ Chokwak's argument assumes that AS 04.16.051(a) provides by implication a private cause of action for civil damages against a social host who illegally provides alcohol to minors. It may fairly be argued that a line of cases dealing with the statutory predecessors to the 1980 revisions so held.[7] Chokwak's argument fails because a

---

5. The memo stated:

The Rules Committee is considering a committee substitute for HCS CSSB 115. I would appreciate your comments on it. The following is the proposed change:

Sec. LIMITATION ON CIVIL LIABILITY. A licensee, or the employee or agent of a licensee, who furnishes an alcoholic beverage to an individual on premises licensed under this title may not be held civilly liable for injuries resulting from the intoxication of that individual unless the furnishing of alcohol beverages occurred in violation of AS 04.15.020(a) and (d), 04.15.060(e), or 04.15.080.

Memo from Representative Samuel R. Cotten to Representative Buchholdt, et al. (March 6, 1980) (available in Senate Judiciary Committee files).

6. AS 04.16.051(a) provides: "A person may not furnish or deliver an alcoholic beverage to a person under the age of 21 years." AS 04.16.180(a) makes violation a class A misdemeanor.

7. *See Alesna v. LeGrue*, 614 P.2d 1387 (Alaska 1980) (allowing private right of action against liquor licensee for statutory violations, noting that "[m]uch of Alaska's crime and physical injury to persons can be traced to alcohol abuse"); *Nazareno v. Urie*, 638 P.2d 671, 674–75 (Alaska

cause of action "implied" from a criminal statute generally cannot be harmonized with a later statute expressly abrogating civil liability. Civil remedies based on criminal statutes are not "implied" in the usual sense of that word. The legislature may not in fact have intended a civil action to flow from a given criminal statute, yet the civil action is permitted because the courts believe that it is consistent with the statute and furthers the policy which underlies the statute.[8] Where, as here, there is express language and an apparent legislative intent to grant broad immunity from civil liability to those who provide alcohol to others, judicially construing a criminal statute to carry with it a civil remedy in conflict with the rule of immunity would be inappropriate.

Chokwak contends a literal reading of section .020 may immunize outrageous conduct in ways that render the statute without any rational basis. He hypothesizes scenarios in which the statute might shield, for example, illegal unlicensed vendors, fraternities which haze initiates, and hosts of high school drinking parties. By reading AS 04.21.020 to apply only to the civil liability of licensees, he argues, the court could avoid such "absurd" results.

As difficult as it is to defend a policy specifically immunizing those who unlawfully furnish liquor to minors from civil liability, we agree with the Worleys that a policy immunizing social hosts in general from liability for injuries caused by intoxicated persons to whom they have served liquor is not indefensible. The legislature could regard a rule requiring a host to closely monitor his or her guests as placing an unwarranted pall on ordinary social hospitality. The legislature could also wish to encourage individuals to assume responsibility for their own actions when consuming alcohol. The "absurdities" that Chokwak suggests result not from construing AS 04.21.020 to apply to social hosts, but from failing to carve out an exception for furnishing liquor to minors. Given the plain language of the statute and the absence of convincing contrary legislative history, we cannot by statutory interpretation construe section .020 to be inapplicable to nonlicensees who illegally furnish liquor to minors.

### B. Is AS 04.21.020 Unconstitutional?

 Chokwak makes both equal protection[9] and due process[10] arguments in support of his claim that AS 04.21.020 is unconstitutional insofar as it immunizes nonlicensees who furnish alcohol to minors. Both arguments depend on whether the rule of immunity is lacking in rationality.

 This court has observed that the due process clause of the state constitution

1981) (recognizing general common law duty of care for vendors, holding that violation of statute prohibiting provision of alcohol to minor or intoxicated person constituted negligence per se for vendor); *Morris v. Farley Enterprises, Inc.,* 661 P.2d 167 (Alaska 1983) (applying negligence per se doctrine to vendor who sold alcohol to minor in violation of statute).

**8.** *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 36, at 220–22 (5th ed. 1984) (footnotes omitted):

Many courts have, however, purported to "find" in the statute a supposed "implied," "constructive," or "presumed" intent to provide for tort liability.... In the ordinary case inquiries into legislative intent are pure fiction, concocted for the purpose. The obvious conclusion must usually be that when the legislators said nothing about it, they either did not have the civil suit in mind at all, or deliberately omitted to provide for it....

Perhaps the most satisfactory explanation is that the courts are seeking, by something in the nature of judicial legislation, to further the ultimate policy for the protection of individuals which they find underlying the statute, and which they believe the legislature must have had in mind. The statutory standard of conduct is simply adopted voluntarily, out of deference and respect for the legislature.

**9.** Article I, section 1 of the Alaska Constitution dedicates the constitution to the principles that "all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State."

**10.** The first sentence of article I, section 7 of the Alaska Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law."

requires that legislation be "at least minimally rational." *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 397 (Alaska 1994). "If any conceivable legitimate public policy for the enactment is either apparent or offered," the enactment will survive due process scrutiny so long as the factual basis for the justification is not disproved. *Id.* at 397–398 (quoting *Keyes v. Humana Hospital Alaska, Inc.*, 750 P.2d 343, 351–52 (Alaska 1988)). Similarly, this court's equal protection analysis under the Alaska Constitution for cases such as the present, which receive review under the "relaxed scrutiny test," involves an inquiry as to whether a questioned classification has a legitimate governmental purpose and whether there is a fair and "substantial relationship" between the act and the reason. *Id.* at 396 (citing *State, Dep't of Revenue v. Cosio,* 858 P.2d 621, 629 (Alaska 1993)).

It is our view that section .020 is not so completely lacking in rationality or legitimacy of purpose as to be unconstitutional. As noted, immunizing social hosts from liability caused by their guests' conduct can rationally be based on a view that it is an undesirable interference with normal hospitality to require a social host to monitor guests' alcohol consumption. Further, the primary actor responsible for harm caused by a drunken person is the drunken person. This was the basis for the "historic common law immunity" of those who furnish liquor to others. *Gonzales,* 882 P.2d at 397. That common law immunity has been replaced in some circumstances through dram shop legislation shifting partial responsibility to the licensed server of alcohol. Retaining this immunity in any case where liquor is unlawfully furnished to minors is questionable and difficult to defend. Still, the legislative desire not to turn social hosts into the policemen of their guests and a recognition of the ultimate personal responsibility of all those who consume alcoholic beverages, including minors, suffice, in our view, to afford the requisite level of minimal rationality and legitimacy of purpose to section .020.

## III. *CONCLUSION*

For the above reasons, we conclude that AS 04.21.020 grants civil immunity to social hosts who unlawfully provide liquor to minors and that this grant of immunity is not unconstitutional. The judgment is therefore AFFIRMED.