Joseph L. BRADSHAW, Appellant,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, DIVISION OF MOTOR VEHICLES, and Duane Bannock, Director, Appellees.

No. S–13262.

Supreme Court of Alaska.

Jan. 29, 2010.

---

Joseph L. Bradshaw, pro se, Anchorage.

Krista S. Stearns, Assistant Attorney General, Anchorage, and Richard A. Svobodny, Acting Attorney General, Juneau, for Appellees.

Before CARPENETI, Chief Justice, EASTAUGH, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

In 1995 the Alaska Division of Motor Vehicles (DMV) suspended Joseph Bradshaw's driver's license because he violated Alaska's mandatory insurance and financial responsibility laws. When Bradshaw applied for license reinstatement in 2007, DMV told him that he had to pay a $100 reinstatement fee. Bradshaw sued the state, arguing that the ten-year statute of limitations barred DMV from charging him the $100 reinstatement fee. The superior court granted summary judgment to the state and dismissed Bradshaw's complaint. Alaska Statute 28.15.271(b)(3)(A) is the authority for a $100 reinstatement fee. Because imposing the $100 reinstatement fee was not an "action" within the meaning of the statute of limitations, and because Bradshaw's license had "been suspended" within the meaning of AS 28.15.271(b)(3)(A) within the ten years preceding his reinstatement application, we affirm.

## II. FACTS AND PROCEEDINGS

Joseph Bradshaw was involved in a February 1995 motor vehicle accident that resulted in over $2,000 in property damage. DMV ordered that Bradshaw's driver's license be suspended for ninety days because he was uninsured at the time of the accident, a violation of the Alaska Mandatory Automobile Insurance Act.[1] Because Bradshaw had also failed to comply with the Motor Vehicle Safety Responsibility Act,[2] DMV ordered that his license be suspended for three years or until "proof of future financial responsibility is provided."[3]

In June 1995 the Department of Public Safety held an administrative hearing to re-

---

1. AS 28.22.011–.321. AS 28.22.041 governs administrative suspension of drivers' licenses for failure to provide proof of insurance. It states in relevant part:

 if a person fails to provide proof required under AS 28.22.021 and 28.22.031, the department shall suspend the driver's license of that person for ... not less than 90 days if, within the preceding 10 years, the person has not had a driver's license suspended for violation of AS 28.22.011 or former AS 28.22.200.

2. AS 28.20.010–.640. The Motor Vehicle Safety Responsibility Act requires "the operator of a motor vehicle involved in an accident [to] respond for damages and show proof of financial ability to respond for damages in future accidents as a prerequisite to the person's exercise of the privilege of operating a motor vehicle in the state." AS 28.20.010.

3. The Motor Vehicle Safety Responsibility Act states that DMV will suspend the license of any driver of a motor vehicle involved in an accident resulting in over $501 in damage to any one person's property unless that driver "has previously furnished or immediately furnishes" security or is otherwise excepted from furnishing such security. AS 28.20.260. AS 28.20.150(a), which governs the duration of the resulting suspension, provides that:

 [u]nless a suspension is terminated under other provisions of this chapter, an order of suspension by the department remains in effect until terminated and a license may not be renewed or issued to a person whose license is suspended until proof of financial responsibility for the future is provided and

 (1) the person deposits or there is deposited on behalf of the person the security required under [the Responsibility Act]; or

 (2) three years elapse following the date of suspension.

view DMV's decision to suspend Bradshaw's license. The hearing officer affirmed the decision to suspend Bradshaw's license under both the Alaska Mandatory Automobile Insurance Act and the Motor Vehicle Safety Responsibility Act. The hearing officer issued written decisions stating that Bradshaw's license would be suspended effective July 15, 1995.

Bradshaw's suspension was ostensibly for three years. But AS 28.20.240, Bradshaw's orders of suspension, and the hearing officer's decisions all stated that any suspension would continue after the initial suspension period until he provided proof of financial responsibility for the future.[4] Most drivers demonstrate proof of future financial responsibility by purchasing insurance and an additional special service from their automobile liability insurer, which agrees to inform DMV if the insurance lapses. The insurer provides the driver with an "SR–22 certificate" confirming the purchase of this specialized service.[5]

Bradshaw was eligible to seek reinstatement of his driver's license as early as February 1996 because he had shortened his three-year suspension by paying the other driver for the damage Bradshaw caused. He took steps to reinstate his license in 1998, but according to a DMV supervisor's affidavit, he complained about having to purchase SR–22 insurance coverage and did not complete the reinstatement process.[6] Because Bradshaw failed to provide DMV proof of his future financial responsibility, his license remained suspended.

In June 2007 Bradshaw formally applied to DMV for reinstatement. [Exc. 8] He indicated on his certified application that his license had been suspended and that the suspension was still in effect. In response, DMV informed Bradshaw that he had to pay a $100

reinstatement fee in addition to the customary $15 or $20 renewal fee.

The authority for charging the $100 reinstatement fee is AS 28.15.271(b)(3)(A), which states that "a person who applies for reinstatement of a driver's license under AS 28.15.211 shall pay a fee of … *$100 if the person's driver's license has, within the 10 years preceding the application, been suspended, revoked, or limited under the provisions of this chapter* … only once." (Emphasis added.)

Bradshaw objected to paying the $100 reinstatement fee and sued the Department of Administration, DMV, and its director, Duane Bannock, in superior court. Bradshaw alleged that because the "incident that is involved in this matter happen[ed] over 10 years ago," the reinstatement fee did not apply to him. He also sought damages of more than $1.5 million.

In March 2008 the superior court granted the state's motion to dismiss Director Bannock from the case because the complaint did not state a cognizable claim against him.[7] In July 2008 the state filed a motion for summary judgment. The superior court granted the motion and dismissed Bradshaw's complaint with prejudice. The court held that to have his driver's license reinstated, Bradshaw had to pay both the statutory $100 reinstatement fee and the $20 renewal fee.

Bradshaw appeals.

## III. DISCUSSION

### A. Standard of Review

 We review grants of summary judgment de novo, drawing all permissible factual inferences in favor of, and viewing the facts in the light most favorable to, the non-

---

4. Likewise, AS 28.20.150(a)(1) states that a suspended license "may not be renewed or issued to a person whose license is suspended until proof of financial responsibility for the future is provided and … the person deposits … the security required under this chapter."

5. AS 28.20.390–.420 list the ways a driver may provide proof of financial responsibility for the future.

6. Bradshaw apparently sued DMV in 1998 over the SR–22 requirement, but his complaint was dismissed for lack of prosecution.

7. Bradshaw does not appeal that ruling.

prevailing party.[8] We affirm grants of summary judgment if there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.[9]

■■■ "Questions regarding the interpretation and application of a statute are questions of law to which we apply our independent judgment."[10] Our goal when interpreting a statute "is to give effect to the intent of the law-making body with due regard for the meaning that the language in the provision conveys to others."[11] We will adopt the rule of law that is most persuasive in light of precedent, reason, and policy after considering the plain meaning of the statute, the legislative purpose of the statute, and the intent of the statute.[12] "When reviewing an agency decision involving statutory interpretation and determination of legislative intent, we apply the substitution of judgment standard."[13] But we may defer to an agency's interpretation of a statute if undefined or ambiguous terms appear in the statute.[14]

### B. Whether the Statute of Limitations Bars Imposing the $100 Restatement Fee on Bradshaw

■■ This case turns primarily on the statutory interpretation of AS 28.15.271. But we must first resolve Bradshaw's contention that Alaska's statute of limitations altogether bars DMV from imposing the reinstatement fee

on him. Bradshaw's complaint asserted that "[t]he incident that is involved in this matter happen[ed] over 10 years ago." Bradshaw argues that the ten-year statute of limitations contained in AS 09.10.100 prevents the state from enforcing the $100 reinstatement fee provision in AS 28.15.271 because "this case is based on information that is over 11 years old." The uninsured accident and Bradshaw's license suspension both occurred in 1995, more than ten years before he applied for reinstatement in 2007. It is unclear whether he considers the accident or the suspension the event that triggered the ten-year statute.

DMV argues that statutes of limitations act as defenses to causes of action, that DMV has not brought an action against Bradshaw, and that statutes of limitations do not apply to fees DMV must charge administratively.

■■■ Alaska Statute 09.10.100 is Alaska's general statute of limitations provision.[15] It states that a party must bring, within ten years, any "action for a cause" not provided for in another statute. Statutes of limitations attempt to strike a balance between ensuring that claimants have enough time to file claims and protecting persons from due process concerns that arise from stale charges.[16] They do so by barring untimely causes of actions or, in the words of section

8. *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005) (citing *Ellis v. City of Valdez*, 686 P.2d 700, 702 (Alaska 1984)).

9. *Id.* (citing *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)).

10. *State v. Jeffery*, 170 P.3d 226, 229 (Alaska 2007) (citing *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006)).

11. *S. Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment*, 172 P.3d 768, 771 (Alaska 2007) (quoting *Marlow v. Municipality of Anchorage*, 889 P.2d 599, 602 (Alaska 1995)).

12. *Rubey v. Alaska Comm'n on Postsecondary Educ.*, 217 P.3d 413, 415 (Alaska 2009) (citing *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007)).

13. *Alaska Pub. Offices Comm'n v. Stevens*, 205 P.3d 321, 324 (Alaska 2009) (citing *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 564 (Alaska 2006)).

14. *See, e.g.*, *Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 643 n. 4 (Alaska 1991).

15. AS 09.10.100 provides that "[a]n action for a cause not otherwise provided for [by another statute] may be commenced within 10 years after the cause of action has accrued."

16. *Brotherton v. Brotherton*, 142 P.3d 1187, 1191 n. 19 (Alaska 2006); *Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 439 & n. 13 (Alaska 2001) (Eastaugh, J., and Fabe, J., dissenting); *West v. Buchanan*, 981 P.2d 1065, 1068 (Alaska 1999) ("[T]he purpose of statutes of limitations is to protect defendants from the injustices that may result from the prosecution of stale claims.").

.100, "action[s] for a cause." [17] "A 'cause of action' is a situation or state of facts which entitles a party to sustain an action *and* gives him the right to seek judicial interference in his behalf." [18]

But a government agency responsible for charging a fee when an applicant seeks a license is not asserting a cause of action when it requires the applicant to pay the fee as a condition of license reinstatement. Nor is it seeking an affirmative remedy or judicial relief. DMV only imposes the reinstatement fee when a person applies for a reinstated license.[19] DMV could not have filed a lawsuit to force Bradshaw to affirmatively seek reinstatement. And DMV did not sue Bradshaw to collect the fee. It was not attempting to obtain judicial relief against Bradshaw; its administrative attempt to collect the fee only responded to Bradshaw's administrative application for reinstatement. DMV's attempt to enforce section .271 consequently is not an "action" subject to the statute of limitations, and AS 09.10.100 does not prevent DMV from charging Bradshaw the reinstatement fee.

### C. Whether, Within the Meaning of AS 28.15.271(b)(3), Bradshaw's License Had "Been Suspended" Within the Previous Ten Years

■ We next turn to the meaning of AS 28.15.271(b)(3). Alaska Statute 28.15.271(b)(3)(A) requires a person who applies for license reinstatement to pay a $100

reinstatement fee if the applicant's driver's license "has, within the 10 years preceding the application, been suspended ... only once." [20]

Bradshaw argues that DMV's $100 reinstatement fee does not apply to him because "this case is based on information that is over 11 years old." Bradshaw's argument is very terse, and he is pro se. We interpret his argument as contending that the $100 reinstatement fee would only apply if he had sought reinstatement within ten years of the administrative act of suspension. Because DMV suspended his license on July 15, 1995, more than ten years before he sought reinstatement in 2007, subsection .271(b)(3)(A) does not apply to him. Therefore DMV cannot condition reinstatement on payment of the $100 fee.

DMV argues that the language of the fee statute, section .271, unambiguously provides that the fee applies if the person's license was in the *state* of suspension at any time during the preceding ten years. It further argues that this construction is correct because the legislature did not draft section .271 to make the *date* of suspension the critical event, as it did in a comparable statutory provision.[21] It also argues that imposing the fee here does not create an anomalous result.

■ "[T]he threshold question in ascertaining the correct interpretation of a statute is whether the language of the statute is clear or arguably ambiguous." [22] Read in

---

17. *Roach v. Caudle*, 954 P.2d 1039, 1041 (Alaska 1998) ("We have determined that the statute of limitations does not begin to run until a cause of action accrues.").

18. *Fraticelli v. St. Paul Fire & Marine Ins. Co.*, 375 F.2d 186, 188 n. 6 (1st Cir.1967) (emphasis in original) (quoting *Rhodes v. Jones*, 351 F.2d 884, 886 (8th Cir.1965)).

19. AS 28.15.271(b).

20. AS 28.15.271 states in pertinent part:
 (b) In addition to the fees under (a) of this section,
 . . . .
 (3) a person who applies for reinstatement of a driver's license under AS 28.15.211 shall pay a fee of
 (A) $100 if the person's driver's license has, within the 10 years preceding the application,

been suspended, revoked, or limited under the provisions of this chapter ... only once;
 (B) $250 if the person's driver's license has, within the 10 years preceding the application, been suspended, revoked, or limited under the provisions of this chapter ... two or more times. . . .

21. In support, DMV cites AS 28.20.150(a)(2), which provides that "a license may not be renewed or issued to a person whose license is suspended until proof of financial responsibility for the future is provided and ... three years elapse following *the date of suspension*." (Emphasis added.)

22. *Fed. Deposit Ins. Corp. v. Laidlaw Transit, Inc.*, 21 P.3d 344, 351 (Alaska 2001) (alteration in original) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 293 n. 4, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)).

isolation, subsection .271(b)(3)(A) does not clearly indicate whether the statute's use of the phrase "been suspended" refers to—as Bradshaw implies—the act of suspension, or—as the state contends—the status of suspension. "Suspended" could be read to refer to the initial administrative act of suspending a driver's license. This would mean the $100 fee would apply only if the first day of suspension were within the ten-year period before the driver applied for reinstatement. Under this interpretation, if DMV suspended a license on January 1, 2000, DMV could not charge the $100 reinstatement fee if the driver applied for reinstatement on January 2, 2010.

Alternatively, "suspended" could be permissibly read to refer to the status of suspension. If so, the $100 fee would apply if the driver's license had been in a state of suspension at any time in the ten years before application, even if the first day of suspension were more than ten years before. Because the statute uses the phrase "has . . . *been* suspended," this is probably the best interpretation of the statute's words. (Emphasis added.) Nonetheless, both interpretations are grammatically permissible under a plain reading of the statute, if its words are read in isolation.

The legislature's use of the phrase "has been suspended" in another section of AS 28.15 helps indicate the most likely meaning of the phrase as it is used in AS 28.15.271. Alaska Statute 28.15.211(a) states that "a person whose driver's license . . . *has been suspended* . . . may not apply for a new license . . . *until the expiration of*" a statutorily defined period. (Emphasis added.) This subsection implies that it is the state of suspension that matters. And AS 28.15.211(c), which permits a suspended driver to seek reinstatement upon payment of fees, "including a reinstatement fee," refers to the "period of suspension," implying that it is the status of suspension, not the date of suspension, that is important in the context of li-

cense reinstatement. Also, as DMV argues, the legislature demonstrated when it wrote AS 28.20.150(a) that it knew how to make the date of suspension the critical event.[23] Considered together, AS 28.15.271(b)(3), AS 28.15.211, and AS 28.20.150(a) provide textual clues that the legislature considered the status of suspension to be the trigger (or at least one of the triggers) for imposing a reinstatement fee.

■ When interpreting a statute, we look to the statutory purpose. The apparent purpose of the reinstatement provisions helps convince us that DMV's interpretation of subsection .271(b)(3) is correct. As we noted above, AS 28.15.211(c) permits a driver to seek reinstatement "upon payment of the proper fees, including a reinstatement fee." Subsection .271(b)(3) specifies the applicable reinstatement fee. That subsection contains four subsections that impose different reinstatement fees, ranging from $100 to $500.[24] For example, AS 28.15.271(b)(3)(A) imposes a $100 reinstatement fee and AS 28.15.271(b)(3)(B) imposes a $250 reinstatement fee.

Nothing in subsection .211(c) or subsection .271(b)(3) implies that drivers seeking reinstatement of their suspended driver's licenses may be excused from paying at least the $100 reinstatement fee. Although suspensions can be for varying lengths of time,[25] all suspensions last until the applicant gives proof of future financial responsibility.[26] Interpreting subsection .271(b)(3)(A)'s ten-year period to be a special administrative statute of limitations that begins running on the date of DMV's suspending act would therefore mean no reinstatement fee could be assessed against an entire class of drivers with suspended licenses, i.e., those drivers whose licenses have been in suspended status for more than ten years. This result would appear to be contrary to subsection .211(c), which permits a suspended driver to seek

---

**23.** *See* note 21 above.

**24.** AS 28.15.271(b)(3).

**25.** *See, e.g.,* AS 28.15.211(a)(1) (providing for one-month suspension); AS 28.15.181(g) (provid-

ing for suspension until licensee appears in court or pays fine).

**26.** See AS 28.20.240, which provides: "A period of suspension . . . continues until proof of financial responsibility for the future is provided."

reinstatement upon payment of fees, "including a reinstatement fee." Subsection .211(c) appears to require any driver seeking license reinstatement to pay a reinstatement fee. Nothing in the statutory scheme implies that anyone seeking reinstatement of a suspended license may avoid paying the basic reinstatement fee of $100. It is not obvious why the passage of time would altogether excuse the holder of a suspended license from paying any reinstatement fee.

█ Implicit in Bradshaw's apparent argument may be the assumption that subsection .271(b)(3)(A) provides suspended drivers a ten-year statute of repose, after which the DMV may not impose the $100 reinstatement fee. In this he may be relying on the phrase "within the 10 years preceding the application," contained in both subsection .271(b)(3)(A) and subsection .271(b)(3)(B). To understand the meaning of that phrase, it is necessary to read the statute carefully. Subsection .271(b)(3)(A) imposes the $100 fee on drivers whose licenses have been suspended "only once" within the past ten years; subsection .271(b)(3)(B) imposes the $250 fee on drivers whose licenses have been suspended "two or more times" within the past ten years. Assuming a driver with multiple suspensions (necessarily requiring at least one prior reinstatement) can avoid the enhanced $250 fee if the prior suspension ended more than ten years before the current reinstatement application, that driver, despite the multiple suspensions, pays only the basic $100 reinstatement fee. The phrase "within the 10 years preceding the application" in subsection .271(b)(3)(B) sets a time period after which past suspensions do not trigger the enhanced fee. Applicants with old suspensions who do not have to pay the $250 fee must still pay the $100 reinstatement fee under subsection .271(b)(3)(A).

If the legislature had not included the phrase "within the ten years preceding the application" in subsection .271(b)(3)(A), applicants with multiple suspensions who do not have to pay the $250 fee would also not have to pay the $100 fee because the driver had not been suspended "only once." It appears that the legislature intended the phrase "within the 10 years preceding the application" in subsection .271(b)(3)(A) to ensure that multiple offenders would have to pay at least $100. The legislature did not intend to provide for a period of repose for applicants with suspended licenses to avoid paying the basic $100 reinstatement fee.

█ We also consider legislative history when we interpret a statute. But the legislative history of this statute is essentially neutral. The requirement of a $100 reinstatement fee in AS 28.15.271(b)(3) was added in 1994 as part of a bill that provided for the revocation of driver's licenses of minors who illegally possessed controlled substances or alcohol.[27] The purpose of the bill was deterring teenagers from engaging in the use and abuse of controlled substances.[28] Nothing in the statutory history shows any legislative intent reflecting what "suspended" means in section .271. The history therefore does not conflict with our interpretation of the statute.

█ Thus, although DMV and Bradshaw both advance grammatically permissible interpretations of the statute and AS 28.15.271(b)(3)'s meaning is not immediately self-evident, our analysis shows that DMV's reading best gives effect to the legislature's apparent intent. Furthermore, we would reach the same result even if we thought the statute were ambiguous. We give some deference to the interpretation of an ambiguous statute by the agency charged with enforcing it.[29] DMV's interpretation and application of subsection .271(b)(3) is plausible, consistent

**27.** House Bill (H.B.) 299, 18th Leg., 2d Sess. (Alaska 1994).

**28.** *An Act relating to revocation of a driver's license for illegal possession or use of a controlled substance or illegal possession or consumption of alcohol; and providing for an effective date: Hearing on H.B. 299 Before the H. Judiciary Comm.,* 18th Leg., 2d Sess. (Alaska 1994) (statement of Rep. Cynthia Toohey).

**29.** *See, e.g., Flisock v. State, Div. of Ret. & Benefits,* 818 P.2d 640, 643 n. 4 (Alaska 1991) (stating that we may defer to agency's interpretation of statute where undefined or ambiguous terms appear in statutory language); *Municipality of Anchorage v. Sisters of Providence in Wash., Inc.,* 628 P.2d 22, 31 (Alaska 1981) (citing *Union Oil of Ca. Co. v. Dep't of Revenue,* 560 P.2d 21, 25 (Alaska 1977)).

with the apparent legislative purpose, and grammatically permissible.

 We therefore conclude that section .271 looks to the status of suspension for the purpose of measuring the ten-year period for imposing reinstatement fees. If at any time within the ten years before reinstatement is sought, the license has been in the status of suspension, the reinstatement fee is payable. Bradshaw indicated in his application that his suspension was "still in effect" as of 2007. The superior court did not err in concluding that Bradshaw must pay the $100 fee required by AS 28.15.271(b)(3)(A).

### D. Whether AS 28.15.271(b)(3) Applies to Suspensions Under Chapters 20 or 22

Bradshaw's appeal has not raised, even implicitly, any issue of whether AS 28.15.271(b)(3) actually applies to his suspension, but an alert reader might wonder whether we are implicitly holding that it does. Subsection .271(b)(3)(A) instructs DMV to impose the $100 reinstatement fee if the person's license "has ... been suspended, revoked, or limited *under the provisions of this chapter.*" (Emphasis added.) The emphasized phrase seems to refer to Chapter 15. But Bradshaw's license was suspended because he violated Chapter 20, the Alaska Mandatory Automobile Insurance Act, and Chapter 22, the Motor Vehicle Safety Responsibility Act. There is therefore a potential question whether the phrase "under the provisions of this chapter" in AS 28.15.271(b)(3)(A) was satisfied. Possibly other provisions in Title 28 have the effect of rendering suspensions under Chapter 20 and 22 as though they are suspensions "under the provisions" of Chapter 15. It is also unclear whether the phrase "under the provisions of this chapter" modifies all the elements of the list "suspended, revoked, or limited," or applies only to the immediate antecedent element of the list, "limited."[30] If it were the latter, the phrase would not apply to reinstatement of a "suspended" license. In any event, these issues were not raised below and

have not been briefed by any party on appeal and are therefore not properly before us.

### IV. CONCLUSION

For these reasons, we AFFIRM.

---

**30.** The latter reading complies with the "last antecedent" rule of statutory construction. *See* 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, STAT- UTES AND STATUTORY CONSTRUCTION § 47.33 (7th ed.2007).