**SOUTH ANCHORAGE CONCERNED COALITION, INC., Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE BOARD OF ADJUSTMENT, David D. Hultquist and Lesa L. Hultquist, Appellees.**

No. S–12286.

Supreme Court of Alaska.

Dec. 14, 2007.

---

Lawrence V. Albert, Anchorage, for Appellant.

Donald W. McClintock and Matthew T. Findley, Ashburn & Mason, P.C., Anchorage, for Appellees Hultquist.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I.  INTRODUCTION

This appeal arises from opposition to a proposed residential development on several hundred acres in south Anchorage.  Appellant South Anchorage Concerned Coalition appealed the Platting Board's preliminary approval of a plat for the development to the Municipality of Anchorage Board of Adjustment, but its appeal was automatically denied because it did not file the hearing transcript within the thirty-day period set forth in the Anchorage Municipal Code. Both the municipal clerk and the Board of Adjustment denied that they had authority to waive the deadline and accept the late transcript.  We read the ordinance at issue to be directory, not mandatory, and hold that the Board of Adjustment therefore has discretion to waive the deadline and to allow the appeal to proceed.  We therefore remand.

## II.  FACTS AND PROCEEDINGS

This appeal is one of several proceedings related to the Kincaid Estates development on former gravel pits in south Anchorage.[1] The procedural history of the case is complex and largely irrelevant to the matter of this appeal.  In short, the Hultquists, appellees here, first applied for approval of the plat at issue in this appeal in November 2001.  The Platting Board ultimately approved the application in July 2004.  The South Anchorage Concerned Coalition (the Coalition), on behalf of those opposed to the development, appealed the Platting Board's decision to the Board of Adjustment.

The Coalition filed notice of appeal of the Platting Board's decision to the Board of Adjustment on August 5, 2004.  Anchorage Municipal Code (AMC) 21.30.050(B) provides that within thirty days of filing notice of an appeal, an appellant must file with the municipal clerk a transcript of the hearing that is the subject of the appeal; if the appellant fails to do so, "the appeal shall be automatically denied."[2]  The Coalition had prepared a transcript but, due to a calendaring error, failed to file it.  Shortly after the thirty-day period for filing the transcript expired, the clerk notified the Coalition that its appeal had been denied under subsection .050(B).

The Coalition filed a motion to set aside the clerk's dismissal of its appeal, along with the transcript of the Platting Board's hearing, on September 20, 2004, thirteen days after the September 7 deadline.  The Hultquists opposed the motion.

The Board of Adjustment held a hearing at which it denied the Coalition's motion and affirmed the clerk's dismissal of the appeal. The Board of Adjustment did not issue a written decision, but in discussing the matter, members of the Board of Adjustment expressed their belief that they were only authorized to hear an appeal that had been "properly presented" to them and were powerless to "second guess" the municipal clerk's "decision" to dismiss an appeal for failure to meet the deadline.

The Coalition interpreted the Board of Adjustment's decision to mean that the code authorized only the municipal clerk to relax the deadline; accordingly, the Coalition requested that the clerk—"as the administrator issuing the letter of dismissal"—set aside the dismissal.  The clerk responded that the Coalition's analysis was incorrect.  Implying that she, too, lacked authority to waive the deadline, she stated only that the Board of Adjustment had "authority ... to exercise independent judgment on legal issues" such as this and that the Board of Adjustment had found no basis to reverse the clerk's decision to dismiss the appeal.

The Coalition then appealed to the superior court, arguing that the Board of Adjust-

---

**1.**  *See S. Anchorage Concerned Coal. v. Municipality of Anchorage,* 172 P.3d 774, Op. No. 6210 (Alaska, December 14, 2007).

**2.**  AMC 21.30.050(B) (1996).

ment was authorized to set aside appeals dismissed under AMC 21.30.050(B). The superior court disagreed; it held that the ordinance mandated automatic dismissal and that it was "just impossible to read it any other way." The court acknowledged that allowing the appeal to proceed would not have prejudiced the Hultquists: "if the Board had had the authority and had failed to lighten up on these facts, ... it would have been ... an abuse of discretion." But the court distinguished municipal ordinances from court rules and other procedural statutes and noted that neither it nor the Board of Adjustment had authority to waive a deadline established by an "independent ordinance-creating body."

The Coalition petitioned for rehearing "on the ground that the court misconceived an issue of law" by failing to consider the Anchorage Municipal Assembly's past practice of routinely allowing appeals to proceed despite late-filed transcripts.[3] In support of its motion, the Coalition submitted evidence of five instances when the Municipal Assembly—before the formation of the independent Board of Adjustment—relaxed the filing deadline. Reasoning that the current Board of Adjustment had set forth a principled justification for departing from any past policy of the Assembly to be more lenient with the transcript filing deadline, the court denied the Coalition's petition for rehearing. It did grant the Coalition permission to supplement the record with minutes from past meetings in which the Assembly had waived the transcript deadline.

The Coalition appeals the decision of the Board of Adjustment refusing to set aside dismissal of its appeal.

## III. DISCUSSION

### A. Standard of Review

When the superior court acts as an intermediate court of appeals in an administrative matter, we independently review the merits of the agency's decision.[4] At issue in this appeal is whether the Board of Adjustment correctly interpreted and applied a procedural ordinance. Because this does not "implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function," we will substitute our independent judgment for that of the agency.[5]

Ordinary principles of statutory interpretation apply to our consideration of the ordinance at issue here.[6] When interpreting a statute or ordinance, "our goal is to give effect to the intent of the law-making body with due regard for the meaning that the language in the provision conveys to others."[7] We adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[8]

### B. Discretion To Waive the Transcript Filing Deadline

The Coalition argues that the Assembly's prior policy of lenity should govern the Board of Adjustment's current application of the transcript filing deadline. The Hultquists counter that the Assembly's past practice was a mistake of law, not an exercise of discretion, and that the Board of Adjustment was correct in strictly applying the ordinance.

Whether a party must strictly comply with a procedural rule, regulation, or statute turns on whether the language of the

3. We note that, after the Coalition filed its appeal, the Anchorage Municipal Assembly amended the Board of Adjustment's enabling statute, converting it into an independent administrative entity composed of three members with staggered terms. Previously, the Assembly itself had acted as the Board of Adjustment for appeals from decisions of the Platting Board.

4. *Williams v. Abood,* 53 P.3d 134, 139 (Alaska 2002).

5. *Alaska Pub. Employees Ass'n v. State,* 831 P.2d 1245, 1247 (Alaska 1992) (citing *Tesoro Alaska*

*Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987)).

6. *See, e.g., City of Skagway v. Robertson,* 143 P.3d 965, 968 (Alaska 2006); *Marlow v. Municipality of Anchorage,* 889 P.2d 599, 602 (Alaska 1995).

7. *Marlow,* 889 P.2d at 602 (internal quotation marks and citations omitted).

8. *Robertson,* 143 P.3d at 968 (citation omitted).

law is mandatory or directory.[9] If a statute is mandatory, strict compliance is required; if it is directory, substantial compliance is acceptable absent significant prejudice to the other party.[10] A statute is considered directory if (1) its wording is affirmative rather than prohibitive; (2) the legislative intent was to create "guidelines for the orderly conduct of public business"; and (3) "serious, practical consequences" would result if it were considered mandatory.[11]

■ We conclude that the language of the ordinance at issue satisfies these criteria and hold that it is, therefore, directory. Anchorage Municipal Code 21.30.050(B) reads:

> The appellant shall arrange for the preparation of the transcript of the board hearing by a court reporter or the current board and commission recording secretary and shall pay the cost of such preparation. The appellant shall file the transcript with the municipal clerk. If the appellant fails to file the transcript within 30 days of the filing of the notice of appeal, the appeal shall be automatically denied.

First, the ordinance's language is in no respect prohibitive; the ordinance assigns responsibility for the preparation and filing of the transcript, but never speaks to what the appellant, the municipal clerk, or the Board of Adjustment can or should *not* do.

As to the second prong of the test, the language of the ordinance is more equivocal. The last clause of the provision, "the appeal shall be automatically denied," arguably imposes a penalty on the appellant for failing to meet the filing deadline. Alternatively, this clause can be interpreted to be a ministerial directive guiding the municipal clerk's management of the case. Seen this way, the

ordinance falls more squarely into that category of provisions intended to be "guidelines for the orderly conduct of public business." [12] We favor this construction for several reasons.

For one, the plain language of AMC 21.30.050 as a whole speaks directly to the duties of the municipal clerk rather than to the broader requirements for establishing the Board of Adjustment's ultimate jurisdiction over the case.[13] In other words, the task at issue here—namely the filing of a transcript—is set apart from the three steps an appellant must take to perfect an appeal to the Board of Adjustment: (1) file a notice of appeal; (2) pay an appeal fee; and (3) post a cost bond within twenty days of the Platting Board's final decision.[14] Once an appellant has accomplished these steps, jurisdiction over the appeal is conferred on the Board of Adjustment. The timely filing of a transcript has no bearing on this jurisdictional process; failure to meet the transcript filing deadline is simply a failure to follow "guidelines for the orderly conduct of public business" [15] that triggers another such guideline: automatic dismissal. A guideline of this kind should not irreversibly jeopardize the Board of Adjustment's jurisdiction to control the course of the appeal.

The language of the provision does use the word "shall," which, in its ordinary use, is an affirmative command that is often taken to be mandatory.[16] But we have held that in some contexts, namely in the "absence of injury to the defendant and in the absence of a penalty for failure to comply with the statute, 'shall' denotes simple futurity rather than a command." [17] In *State v. Schnell,* for

9. *See In re Reinstatement of Wiederholt,* 24 P.3d 1219, 1233 (Alaska 2001); *see also State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell,* 8 P.3d 351, 357 (Alaska 2000).

10. *In re Wiederholt,* 24 P.3d at 1233 (citation omitted).

11. *Id.* (quoting *City of Yakutat v. Ryman,* 654 P.2d 785, 789–91 (Alaska 1982)).

12. *In re Wiederholt,* 24 P.3d at 1233.

13. See AMC 21.30.050(A) ("Upon timely perfection of an appeal to the board of adjustment, the municipal clerk shall prepare an appeal record. The record shall contain. . . .").

14. AMC 21.30.030(A)(1).

15. *In re Wiederholt,* 24 P.3d at 1233.

16. *State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell,* 8 P.3d 351, 357 (Alaska 2000) (citing *Comm'r of Ins. v. Stryker,* 218 Ga.App. 716, 463 S.E.2d 163, 166 (1995)).

17. *Id.* (citing *Stryker,* 463 S.E.2d at 166).

example, we applied that rule to hold that a statute providing that "[w]ithin 30 days after termination of the hearing, . . . the director shall make an order on hearing" was directive, not mandatory, because the statute "imposes no penalty or consequences for failing to rule timely." [18] We further noted that to read the statute as imposing an absolute bar on state action after the thirty-day period expired would lead to "absurd and undesirable results." [19]

In another case, we relied on *Schnell* to hold that a rule stating that a hearing committee "will promptly schedule a hearing to take place within 30 days of the filing of the petition" was directive.[20] In addition to the factors discussed in *Schnell*, we emphasized that the "primary purpose of the time limits is merely to provide a broad set of guidelines for how the Hearing Committee . . . should proceed." [21] We likewise noted that "serious, practical consequences" were at stake in that a strict time limit in this context would "fail to take into account the many common exigencies and contingencies of litigation" and would "clearly inhibit the discretion of the Hearing Committee to make adjustments for these or other similar events." [22]

As in these cases, the primary purpose of the time limit at issue here is to set guidelines directing how the clerk should proceed when a timely transcript has not been filed. The deadline for filing briefs in platting board appeals starts with service of the record upon the parties.[23] A late-filed transcript—which is part of that record—merely delays the start of this thirty-day period; this does not necessarily prejudice an appel-

lee in the presentation of a case, and the Hultquists have not advanced any specific claim of prejudice here. In our view, the primary purpose of the directive is to guide the clerk's orderly management of the case, not to impose a litigation-ending sanction on the appellant.

■ The third prong of the test is also met here: serious practical consequences would result if the deadline were considered mandatory. To dismiss an appeal for failure to timely file a transcript, without prior notice and an opportunity to be heard, would present procedural due process concerns.[24] Apart from amounting to an automatic litigation-ending sanction,[25] an unalterable consequence of this kind would "inhibit the discretion" of the Board of Adjustment to entertain potentially meritorious appeals.[26] As we have observed before, "[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." [27] Accordingly, we hold that the Board of Adjustment has the discretion to relax the filing deadline set forth in AMC 21.30.050(B) and to allow the appeal to proceed.[28]

## IV.  CONCLUSION

For these reasons, we REMAND the case to the Board of Adjustment to consider whether the factual circumstances of this case warrant relaxing the deadline and allow-

---

18.  *Id.* (quoting AS 21.06.220(a) (alterations in original)).

19.  *Id.* In *Schnell*, the "undesirable result" was that a license holder would be insulated from justifiable state action against his or her license. *Id.*

20.  *In re Wiederholt*, 24 P.3d at 1232–33.

21.  *Id.* at 1233.

22.  *Id.*

23.  AMC 21.30.060.

24.  *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

25.  *See Arbelovsky v. Ebasco Servs., Inc.*, 922 P.2d 225, 227 (Alaska 1996).

26.  *In re Wiederholt*, 24 P.3d at 1233.

27.  *Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236, 1243 (Alaska 1984) (citation omitted).

28.  Notably, past practices of the Assembly—which authored the ordinance—indicate that it, too, historically understood the provision to be directory, not mandatory. The Coalition has provided evidence of at least four separate occasions where the Assembly relaxed the transcript filing deadline.

ing the Coalition's appeal to proceed.[29]

MATTHEWS, Justice, not participating.

**29.** Our disposition of this issue makes it unnecessary to address other issues raised by the Coalition.