*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FRANK GRISWOLD, | ) | |
| | ) | Supreme Court No. S-18939 |
| Appellant, | ) | |
| | ) | Superior Court No. 3HO-22-00278 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CITY OF HOMER, | ) | |
| | ) | No. 7798 – November 28, 2025 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Lance Joanis, Judge.

Appearances: Frank Griswold, pro se, Homer, Appellant. Michael Gatti and Max D. Holmquist, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

HENDERSON, Justice.

## I. INTRODUCTION

A city passed an ordinance amending its zoning code. A resident sued for declaratory and injunctive relief, alleging that the city failed to comply with procedural rules and statutory notice requirements and that the ordinance was substantively flawed. The superior court granted summary judgment against the resident and awarded attorney's fees to the city. The resident appeals, challenging the ordinance on

procedural and substantive bases and also arguing that the attorney's fee award was an abuse of discretion.

Seeing no error or abuse of discretion, we affirm the superior court's decision on the merits, as well as its award of attorney's fees.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Adoption of zoning ordinance

The City of Homer (the City) is comprised of fourteen zoning districts.[1] Its zoning code contains a list of uses that are permitted outright in each district, and a list of uses that require a conditional use permit.[2] The City's planning commission (the Commission) may only approve, or approve with conditions, conditional use permit applications that satisfy certain review criteria.[3] The Commission must also hold a public hearing before issuing a conditional use permit.[4]

In 2022, the city planner initiated a draft amendment to the City's zoning code that eventually became the ordinance, Ordinance 22-68(A), at the center of this lawsuit.[5] The City's planning department sought to increase efficiency, reduce costs, and encourage development by removing permitting requirements where conditional use permits were routinely being approved without the Commission adding any conditions. The city planner therefore performed a "comprehensive review" of all the

---

[1] *See* Homer City Code (HCC) 21.10.010(b).

[2] *See, e.g.*, HCC 21.12.020 (listing uses that are permitted outright in Rural Residential District); HCC 21.12.030 (listing uses in Rural Residential District that require conditional use permits).

[3] HCC 21.71.020-.040 (describing application process, review criteria, and approval standards for conditional use permits).

[4] HCC 21.71.050.

[5] *See* HCC 21.95.010 ("[A]mendment to [the zoning code] may be initiated by . . . [t]he [c]ity [p]lanner . . . .").

conditional use permits that had come before the Commission over the previous decade. Based on that review, he and the planning department identified conditional uses that they thought should be changed to permitted uses in different zoning districts.

The planning department examined the proposed amendment and found that it was consistent with the City's comprehensive plan; would be reasonable to implement and enforce; would promote public health, safety, and welfare; and was consistent with the intent and wording of the rest of the zoning code.[6] It then forwarded to the Commission a staff report detailing the recommended revisions for each district. The introduction to the report stated that the recommended changes would increase "efficien[cy] with the use of planning resources and encourage developments recommended through the comprehensive plan and city code." It further previewed that the report listed recommended changes for each district, alongside the district's intent and primary use under the comprehensive plan, in order to give context to "how a use and/or density and design concerns are [to] be supported in a district."

Between July and September 2022, the Commission held a work session and four meetings during which it considered the proposed amendment. The city planner attended the meetings, and after each meeting he and the planning department assisted the Commission by "revising the recommendations and summarizing the changes in a new staff report to reflect the Commission's preferences." In early September 2022 the Commission voted to adopt the latest staff report and to hold a public hearing regarding the draft ordinance.

The City published a notice announcing that a public hearing would take place on September 21, 2022. The notice described the ordinance as "amending [the] Homer City Code . . . regarding conditional uses in each district" and listed each

---

[6] *See* HCC 21.95.040 (requiring planning department to evaluate whether amendments to zoning code meet those four criteria).

affected district. It also listed contact information for the city planner and noted that additional information would be available on the City's website before the hearing.

At the hearing, the city planner summarized the most recent staff report and the proposed ordinance. The City's mayor, who had tie-breaking authority on the city council and no voting authority on the Commission, commented in support of the ordinance, noting that it was his "ambition to reduce the number of conditional use permits, because that's been the root of almost all city litigation in court."[7] The Commission then voted to adopt the most recent staff report and to forward the draft ordinance to the city council.

Soon after, the city planner sent a memo to the mayor and the city council containing the draft ordinance, all prior versions of the draft ordinance, the four staff reports, and the meeting minutes for all the Commission meetings at which the ordinance was discussed. The memo noted that the city planner had been working with the Commission on the ordinance, and that "[t]he Commission fe[lt] that [conditional use permits] should be reserved for uses or structures that are likely to be in need of conditions that may not be addressed [in the] code." The Commission therefore "recommend[ed] that the Homer City Council adopt the draft ordinance."

The city council first considered the draft ordinance at a meeting in early October 2022. It voted to conduct a second reading and a public hearing. The City then published a notice announcing the public hearing and describing the ordinance in the same terms as the previous public notice. The notice also stated that "[c]opies of proposed Ordinances in [their] entirety[] are available for review online[,] . . . at the Homer City Clerk's Office, and at the Homer Public Library." It also provided a link to the City's website and contact information for the Clerk's Office.

---

7    HCC 02.070.040(h); 02.72.010(d).

The city council held a public meeting a few weeks later. The city manager explained that the proposed ordinance was "a streamlining measure" that would increase efficiency for both the City and its residents. Three members of the public commented in opposition to the ordinance. The city council made two amendments to the ordinance based on comments from councilmembers, then adopted it by a 4-1 vote.

## B. Proceedings

### 1. Frank Griswold's complaint and the City's motion for summary judgment

A resident, Frank Griswold, filed a complaint against the City seeking declaratory and injunctive relief. The complaint alleged that in enacting the ordinance, the City failed to comply with three sections of Homer City Code 21.95, which governs how the planning department, the Commission, and the city council move zoning amendments through the legislative process.[8] Griswold also argued that the City failed to comply with statutory public notice requirements; that Ordinance 22-68(A) had no reasonable relation to a legitimate government purpose, in violation of substantive due process; and that Ordinance 22-68(A) lacked the attributes of an enforceable law.

The City moved for summary judgment. Griswold filed an opposition and cross-motion for summary judgment.

### 2. Superior court order granting summary judgment to the City

The superior court granted the City's motion for summary judgment and denied Griswold's cross-motion, determining that there was no genuine issue of material fact to be litigated.

The superior court first determined that Griswold's complaints that the planning department and Commission failed to comply with the city code were not justiciable because they alleged violations of legislative procedure. The court held in

---

[8] *See* HCC 21.95 ("Legislative Procedures and Amendments").

- 5 - 7798

the alternative that even if the claims were justiciable, the applicable chapter of the city code required only substantial compliance and the City substantially complied with the code.

Second, the superior court concluded that the City's public notices complied with public notice requirements. It rejected Griswold's argument that the notices were misleading, reasoning that they accurately described the purpose of the ordinance.

Finally, the superior court rejected Griswold's arguments that the ordinance served no legitimate government purpose and was "unenforceable." It found that the City enacted the ordinance for the legitimate goals of increasing efficiency and saving citizens money, and that Griswold failed to set forth evidence to the contrary. It concluded that Griswold's unenforceability argument was based on an irrelevant statutory requirement for ballot initiatives, but alternatively reasoned that the ordinance was neither vague nor difficult to understand.

### 3. The City's motion for attorney's fees

The City moved for an award of prevailing-party attorney's fees.[9] The City argued that it was the prevailing party because the superior court granted summary judgment in its favor on all claims. It submitted billing records demonstrating that it incurred $43,743.50 in attorney's fees. The billing records were partially redacted "pursuant to the protections offered by the attorney-client privilege and the work-product doctrine." The City argued that the billing records showed the fees were both reasonable and necessarily incurred, and that it should therefore be awarded $8,748.70, representing 20% of its fees in accord with Alaska Civil Rule 82's fee schedule.

---

[9] *See* Alaska R. Civ. P. 82(b)(2) (providing that prevailing party in cases resolved without trial shall be awarded 20% of its actual attorney's fees, absent mitigating circumstances).

Griswold opposed the City's motion. He argued that he was actually the prevailing party in the case because the city council had subsequently rescinded some aspects of the ordinance that he had challenged. He also argued that each of his claims raised procedural or substantive due process issues, so he should be exempt from paying attorney's fees under the statutory protection for constitutional litigants.[10] Finally, he argued that there were "compelling reasons" to reduce or set aside attorney's fees under Civil Rule 82.[11]

Griswold also argued that the City's redacted billing invoices were inadequate to support an attorney's fee award. He filed a separate motion for in camera review of the City's invoices, arguing that the superior court was required to review the unredacted invoices to determine if they contained privileged information.

### 4. Superior court order granting attorney's fees

The superior court granted the City's motion for attorney's fees, awarding the City its requested $8,748.70. It determined that the City was the prevailing party because it had granted summary judgment in the City's favor as to all claims. It also concluded that although two of Griswold's claims alleged constitutional violations, he did not qualify for the constitutional litigant exception to the general attorney's fee rule because his constitutional claims were "objectively unreasonable" and therefore frivolous. The court further found that there were no compelling reasons to set aside the presumptive 20% award.

Finally, the superior court found that regardless of whether the City's billing invoices contained privileged information, the City's redactions did not materially interfere with the court's understanding of the services performed for the

---

[10] *See* AS 09.60.010(c)(2) (shielding constitutional litigants from attorney's fees so long as claims not frivolous and no sufficient economic incentive to bring suit).

[11] *See Dickson v. State, Dep't of Nat. Res.*, 433 P.3d 1075, 1089-90 (Alaska 2018) ("[A]ttorney's fee award that is presumptively correct may be set aside for 'compelling reasons.' ").

purposes of awarding attorney's fees. It denied Griswold's motion for in camera review as moot and rendered final judgment in the City's favor.

Griswold appeals.

## III.   STANDARDS OF REVIEW

We review a grant of summary judgment de novo.[12] We will affirm summary judgment if the record "fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[13] "When considering whether the moving party is entitled to summary judgment, we construe the facts in the light most favorable to the non-moving party, and we review the trial court's factual findings under the clearly erroneous standard."[14]

We review questions of statutory interpretation using our "independent judgment, interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[15]

We review an award of attorney's fees for abuse of discretion,[16] but we use our independent judgment to review the application of the constitutional litigant exception to attorney's fees.[17] We will not find an abuse of discretion absent a showing

---

[12]     *Swalling Constr. Co. v. Alaska USA Ins. Brokers, LLC*, 558 P.3d 613, 617 (Alaska 2024).

[13]     *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007) (quoting *Dayhoff v. Temsco Helicopters, Inc.*, 848 P.2d 1367, 1369 (Alaska 1993)).

[14]     *McCormick v. City of Dillingham*, 16 P.3d 735, 738 (Alaska 2001) (footnote omitted).

[15]     *Aiken v. Alaska Addiction Pros. Ass'n*, 552 P.3d 454, 463 (Alaska 2024) (quoting *Johnson v. State, Dep't of Corr.*, 380 P.3d 653, 655 (Alaska 2016)).

[16]     *Ware*, 161 P.3d at 1192.

[17]     *Griswold v. City of Homer*, 556 P.3d 252, 262 (Alaska 2024).

that an award was "arbitrary, capricious, manifestly unreasonable, or the result of an improper motive."[18]

## IV. DISCUSSION

Griswold raises numerous points on appeal. We address these points in three broad categories. First, Griswold challenges the procedures the City followed when enacting the zoning ordinance. Second, Griswold challenges the substance of the ordinance. And third, Griswold challenges the attorney's fee award.[19]

### A. Procedural Issues

**1. The superior court did not err in determining that the city code required only substantial compliance and that the City met that standard when enacting the ordinance.**

Griswold asserts that in enacting the ordinance the City violated three distinct requirements of Homer City Code 21.95, which governs how the City proposes and adopts amendments to the zoning code. The superior court made alternative rulings on this issue, first determining that Griswold's claims were not justiciable because they alleged violations of "legislative procedure," and then holding that regardless, the City substantially complied with code requirements. Because we agree with the court's

---

**18** *Keenan v. Meyer*, 424 P.3d 351, 356 (Alaska 2018) (quoting *Johnson v. Johnson*, 239 P.3d 393, 399 (Alaska 2010)).

**19** Griswold also argues that the superior court did not correctly apply the summary judgment standard, which requires that the court view evidence in the light most favorable to him and grant summary judgment only in the absence of genuine issues of material fact. *See McCormick*, 16 P.3d at 738. But as discussed further throughout our treatment of Griswold's other challenges, this argument disregards his frequent reliance on conclusory or speculative allegations and his failure to set forth evidence establishing genuine disputes of material fact before the superior court. *See Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516-17 (Alaska 2014) (once party seeking summary judgment has offered admissible evidence proving entitlement to judgment, non-movant must set forth evidence that is "not . . . too conclusory, too speculative, or too incredible to be believed" to establish genuine and material factual issues).

conclusion that Homer City Code 21.95 requires only substantial compliance and the City met that standard, we decline to reach the justiciability issue.

### a. Homer City Code 21.95 requires only substantial compliance.

We apply our independent judgment to the question of whether a procedural rule requires strict or merely substantial compliance.[20] The question "depends on whether the language of the law is mandatory or directory."[21] A rule is considered directory — thus requiring only substantial compliance — if "(1) its wording is affirmative rather than prohibitive; (2) the legislative intent was to create guidelines for the orderly conduct of public business; and (3) serious, practical consequences would result if it were considered mandatory."[22]

Considering these factors, we conclude that Homer City Code 21.95 is directory. First, its wording is affirmative rather than prohibitive. In laying out how the City proposes, evaluates, and adopts amendments to the zoning code, it repeatedly uses the word "shall" but does not impose any sort of penalty for failure to comply,[23] which we have interpreted as being affirmative in similar contexts.[24] Second, the code

---

[20] *Griswold*, 556 P.3d at 267 (applying independent judgment to whether provision of Homer code required strict compliance).

[21] *Id.* (citing *S. Anchorage Concerned Coal., Inc. v. Mun. of Anchorage Bd. of Adjustment*, 172 P.3d 768, 771-72 (Alaska 2007)).

[22] *Id.* (quoting *S. Anchorage Concerned Coal.*, 172 P.3d at 772) (internal quotation marks omitted).

[23] *See* HCC 21.95.040-.060 (providing that planning department "shall" evaluate proposed amendments to zoning code under certain criteria, planning department "shall" present such amendments to Commission, and that after reviewing them Commission "shall" submit its written recommendations along with other materials to city council).

[24] *S. Anchorage Concerned Coal.*, 172 P.3d at 772 ("[I]n the 'absence of injury to the defendant and in the absence of a penalty for failure to comply with the

"appears to have been framed to guide the City in deciding what sorts of information to consider" when assessing zoning amendments,[25] while still leaving it substantial discretion to adopt, amend, or reject proposed amendments.[26] Third, requiring strict compliance would result in "serious practical consequences" in that any small procedural deviation from the code would, as the superior court put it, "require a proposed ordinance to be completely tossed."[27] That result is impractical and unwarranted by the language of the code; moreover, a substantial compliance standard still allows parties to challenge ordinances on procedural and substantive bases.[28] The City need only substantially comply with Homer City Code 21.95.

### b. The City substantially complied with the code.

Having decided that the City need not strictly comply with Homer City Code 21.95, we now examine whether it substantially complied with each of the three requirements invoked by Griswold when it proposed and adopted the challenged ordinance. We conclude that it did.

### i. The planning department's evaluation of the proposed zoning amendment substantially complied with the code.

Griswold first argues that the planning department failed to properly evaluate the proposed ordinance as required by the city code.

---

statute, "shall" denotes simple futurity rather than a command.' " (quoting *State, Dep't of Com. & Econ. Dev., Div. of Ins. v. Schnell*, 8 P.3d 351, 357 (Alaska 2000))).

**25** *Griswold*, 556 P.3d at 268.

**26** HCC 21.95.070.

**27** *See Griswold*, 556 P.3d at 268 ("Requiring strict compliance would prevent applicants . . . from using their property in permissible ways simply because they did not write the magic words . . . on their permit application.").

**28** *See id.* (noting strict compliance was "not necessary to protect neighbors like Griswold, who can still challenge" on other bases).

The planning department must "evaluate each amendment" to the zoning code and may recommend that the Commission approve an amendment only if it finds that the amendment meets four criteria: 1) it is consistent with and will further the goals of the comprehensive plan; 2) it will be reasonable to implement and enforce; 3) it will promote the present and future public health, safety, and welfare; and 4) it is consistent with the intent and wording of the rest of the zoning code.[29] The superior court found that the City substantially complied with this requirement, and we agree.

We apply a presumption of validity to the proceedings of local governments, and the challenger of such proceedings bears the burden of overcoming that presumption.[30] This requires the challenger to produce affirmative evidence that the city failed to comply with the law, rather than relying on inferences.[31]

Griswold fails to meet that burden. He primarily argues that "[t]here is no evidence in the record that the Planning Department evaluated" the proposed ordinance under the four criteria. But even if that were true, such lack of evidence would leave intact the presumption that the City acted lawfully.[32] And it is *not* true: the city planner stated in his affidavit that before the planning department forwarded the proposed ordinance to the Commission, it examined the ordinance "under all of the factors" and "found that [it was] consistent with each of these objectives." This statement supports the superior court's conclusion that the planning department substantially complied with the code.

Griswold offers no affirmative evidence to contradict the city planner's representation that each criterion was considered. Rather, he urges us to infer that the

---

**29**    HCC 21.95.040.

**30**    *City of St. Mary's v. St. Mary's Native Corp.*, 9 P.3d 1002, 1008 (Alaska 2000) (citing *Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1118 (Alaska 1978)).

**31**    *McCormick v. City of Dillingham*, 16 P.3d 735, 738-39 (Alaska 2001).

**32**    *See City of St. Mary's*, 9 P.3d at 1008.

statement was false for several reasons. First, he points out that the planning department made no written findings regarding the evaluation factors. But the relevant subsection of the code makes no mention of written findings; it simply requires the planning department to "evaluate" amendments to the zoning code.[33] The lack of written findings does not mean that the City did not evaluate the ordinance as it was required to do.[34]

Second, Griswold argues that because the city council eventually rescinded parts of the ordinance, we should conclude that the ordinance could not have complied with the evaluation factors in the first place. But the city council retains nearly complete legislative discretion to make changes to the zoning code,[35] and its later revocation of an ordinance does not mean that the planning department initially failed to evaluate that ordinance.

Finally, Griswold points to what he sees as inconsistencies between the ordinance and the larger zoning code as proof that the planning department failed to evaluate whether the ordinance was "consistent with the intent and wording of the other provisions of this title."[36] But the inconsistencies he identifies are minor, and we have held that merely pointing to "anomalies" in an ordinance is insufficient to overcome the presumption of government regularity.[37] The superior court did not err in determining that the planning department properly evaluated the proposed ordinance.

---

[33]     HCC 21.95.040.

[34]     *See id.* (absence of written findings requirement).

[35]     HCC 21.95.070 ("When [c]ity [c]ouncil is considering an amendment [to the zoning code, it] may adopt the proposed amendment as submitted *or with amendments*, or reject the proposed amendment." (emphasis added)).

[36]     HCC 21.95.040(d).

[37]     *McCormick v. City of Dillingham*, 16 P.3d 735, 738-39 (Alaska 2001) ("Although McCormick can point to anomalies in the codification of the sales tax . . . he has not established that the city failed to comply with the law.").

### ii. The planning department's report to the Commission substantially complied with the city code.

Griswold also argues that the report that the planning department submitted to the Commission failed to comply with the city code.

The code states that within 30 days of determining that a proposed amendment to the zoning code is "complete and complies with the requirements of this chapter," the planning department "shall present the amendment to the [Commission] with [the planning department's] comments and recommendations, accompanied by proposed findings consistent with those comments and recommendations."[38] Here, after the planning department completed its review of the proposed ordinance, it submitted a staff report to the Commission detailing the recommended revisions for each district. We agree with the superior court that this report complied with the city code.

Griswold raises two arguments that the superior court erred, both of which fail. First, he argues that this part of the code requires the planning department to make written findings regarding how a proposed amendment to the zoning code complies with each of the four criteria that the planning department must consider in its initial review. We agree that the planning department's staff report did not expressly discuss those criteria. But the plain language and structure of the code indicate that it was not required to do so.[39] As the superior court pointed out, the requirement that the planning department evaluate amendments under the four factors is in a separate subsection of

---

[38] HCC 21.95.060(b).

[39] *See State v. Fyfe*, 370 P.3d 1092, 1094-95 (Alaska 2016) (describing our "sliding scale approach to statutory interpretation, in which 'the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be' " (quoting *Adamson v. Mun. of Anchorage*, 333 P.3d 5, 11 (Alaska 2014))).

the code, which makes no mention of written findings.[40] The subsection implicated here only mandates that the planning department submit "comments and recommendations, accompanied by proposed findings consistent with those comments and recommendations."[41] It makes no mention of the evaluation factors.[42] We agree with the superior court that the planning department was not required to make written findings regarding each evaluation factor to comply with the city code.

Griswold also argues that the planning department in fact made *no* proposed findings in the staff report it submitted to the Commission. This argument relies on an overly formalistic reading of what the code requires. It is true that the planning department's report did not include anything expressly labeled as "proposed findings," but the introduction to the report notes that all the recommended changes will increase "efficien[cy] with the use of planning resources and encourage developments recommended through the comprehensive plan and city code." The introduction also notes that the report lists each district's intent under the comprehensive plan in order to provide context for "how a use and/or density and design concerns are [to] be supported in a district" through the proposed changes. The "recommended revisions" sections further contain conclusions about how the proposed changes would impact each district. These statements function as proposed findings that guide the Commission in interpreting the functionality and legality of the planning department's recommendations and comments. In sum, the superior court did not err in concluding that the planning department substantially complied with the requirement for proposed findings.

---

[40] HCC 21.95.040 (requiring only that the planning department "evaluate each amendment" and "recommend approval" if it finds that amendment consistent with evaluation criteria).

[41] HCC 21.95.060(b).

[42] *Id.*

### iii. The Commission's written recommendations to the city council complied with the city code.

Griswold also argues that the Commission failed to submit written recommendations to the city council as mandated by the city code.

The code requires the Commission to "submit to the [c]ity [c]ouncil its written recommendations regarding the amendment proposal" along with the planning department's report and other materials.[43] After the Commission held its public hearing, the city planner sent a memo to the city council stating that the Commission recommended the Council adopt the ordinance. We agree with the superior court that this memo complied with the code.

Griswold argues that the Commission "did not submit *anything* to the [c]ity [c]ouncil," because it was the city planner, not the Commission, who submitted the memo. (Emphasis added.) But the record supports the superior court's conclusion that the memo and its supplemental materials reflected the Commission's recommendations. The memo stated that the city planner had been "working with the [Commission]" and that "[t]he Commission feels that [conditional use permits] should be reserved for uses or structures that are likely to be in need of conditions . . . and recommends that the Homer City Council adopt the draft ordinance." The memo also contained two staff reports that the city planner had updated to "reflect the Commission's preferences" and which the Commission had unanimously adopted. Griswold's claim that the Commission did not submit written recommendations to the city council thus fails.

### 2. The superior court did not err in determining that the City complied with statutory notice requirements.

Griswold next argues that the public notices the City published inaccurately summarized the ordinance in violation of statutory notice requirements.

---

[43] HCC 21.95.060(d).

When a governing body enacts a new ordinance, AS 29.25.020(b)(3) requires it to publish, at least five days before the required public hearing, "a summary of the ordinance . . . together with a notice of the time and place for the hearing."[44] The city code similarly requires notice with a "summary of the ordinance and its amendments."[45] We have held that the summary within a notice complies with AS 29.25.020(b)(3) if it "describe[s] clearly, if generally, what the proposed ordinance would accomplish."[46]

Here, the Commission and the city council published nearly identical notices summarizing the ordinance as amending the city codes regulating nine zoning districts "regarding conditional uses in each district." The superior court concluded this was adequate to satisfy notice requirements, and we agree.

Griswold points out that the notices stated only that the ordinance regarded conditional uses in each district. He argues that the notices should instead have clarified that the amendment would convert conditional uses into permitted uses, and that they should have listed each of the affected uses for each district. But we have upheld notices that are "incomplete"[47] and "not perfect"[48] so long as they are accurate. The notices

---

[44]     AS 29.25.020(b)(3).

[45]     HCC 01.08.020 (requiring notice of hearing and summary of ordinance to be published at least five days before hearing); *see also* HCC 21.95.060(c) ("Planning [d]epartment shall schedule one or more public hearings before the [Commission] on an amendment proposal, and provide public notice of each hearing in accordance with Chapter 21.94 HCC."); HCC 21.95.070 ("[C]ity [c]ouncil shall consider an amendment proposal to this title in accordance with the ordinance enactment procedures in the Homer City Code.").

[46]     *Fairbanks N. Star Borough v. Coll. Utils. Corp.*, 689 P.2d 460, 462 (Alaska 1984).

[47]     *Kotzebue Lions Club v. City of Kotzebue*, 955 P.2d 921, 925 (Alaska 1998).

[48]     *Coll. Utils. Corp.*, 689 P.2d at n.7.

here accurately advised that the proposed ordinance would amend conditional uses in certain districts. The City was not required to elaborate on precisely how the ordinance would affect conditional uses.[49] Nor was it required, as Griswold suggests, to list each of the proposed changes for each affected district. Requiring such a level of detail would run counter to the legislature's express decision to require publication of only a summary.[50] The notices here in fact contain more detail than notices we have upheld in other cases in that the notices here listed each affected zoning district and also directed interested parties to find more information, including the full ordinance, on the City's website.[51] All told, the superior court did not err in holding that the notices complied with state statute and the city code.

## B. Substantive Issues

### 1. The superior court did not err in determining that the ordinance serves a legitimate public purpose and does not violate due process.

Griswold's first substantive claim is that Ordinance 22-68(A) "is a product of arbitrary decision-making and improper motives and serves no legitimate public purpose," thus violating substantive due process requirements.

We have held that a legislative body's zoning decision violates substantive due process rights if it has "no reasonable relationship to a legitimate government

---

[49]     *See id.* at 462-63 (upholding notice that said ordinance would "Fix[] the Rate Of Real Property Tax Levy," but did not specify that ordinance would raise tax rate).

[50]     *Id.* at 463 (noting that "[t]he Legislature decided to require publication only of a 'summary' of each proposed ordinance, not publication of the ordinance itself," which differs from other jurisdictions).

[51]     *See id.* (upholding notice that did not specify which areas would be affected by proposed tax rate changes).

purpose."[52] The party claiming a denial of substantive due process bears the "heavy" burden of "demonstrating that no rational basis for the challenged legislation exists."[53] "[I]f any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification."[54] At the summary judgment stage, "the existence of facts known to the court which provide . . . a rational basis is sufficient by itself to establish that the statute or ordinance is not arbitrary, so long as the opponents of the legislation do not assert the contrary of those facts."[55]

Here, the superior court did not err in determining that the City had a legitimate public purpose in enacting Ordinance 22-68(A). The record shows that the planning department initiated the ordinance to save both the City and its citizens time and resources by making it easier to get zoning permits for certain uses. The staff reports also suggest that the City sought to encourage development in certain districts by making permitting easier. Along those lines, we have held that goals such as "provid[ing] a convenience to the public and guid[ing] growth and development" in particular areas are legitimate, so long as a city's action bears a reasonable relationship to those goals.[56]

---

[52] *Griswold v. City of Homer*, 925 P.2d 1015, 1019 (Alaska 1996) (citing *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974)); *see also Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 263 (Alaska 2000) ("[W]e must begin 'with the presumption that the action of the legislature is proper.'" (quoting *Concerned Citizens*, 527 P.2d at 452)).

[53] *Griswold*, 925 P.2d at 1019 (quoting *Concerned Citizens*, 527 P.2d at 452).

[54] *Id.*

[55] *Concerned Citizens*, 527 P.2d at 452.

[56] *Griswold*, 925 P.2d at 1023.

In light of the record in this case, we agree with the superior court's conclusion that Griswold failed to raise a genuine issue of material fact regarding the apparent purposes for the ordinance. Griswold does not meet his burden to counter the City's showing of legitimate public purpose.[57] In opposing a motion for summary judgment, the non-moving party may not rest upon mere allegations, but must set forth specific facts.[58] Griswold, however, relies on the conclusory allegation that the City's true goal was to "prohibit [Griswold] and other citizens of Homer from appealing [Commission] approvals of conditional use permit applications." The only evidence he points to in support of this assertion is a comment from the mayor at one of the city council meetings that he had long wanted to reduce conditional use permits because it was "the root of almost all city litigation in court." But as the superior court pointed out, Griswold provides no evidence that "the Council was improperly influenced by [the mayor's] statements, nor how [the mayor] played a crucial role in the passing of the ordinance since it was passed on a 4-1 vote that he did not participate in." We agree with the superior court that the mayor's comment — even if we were to consider it improper — does not disprove the City's legitimate public purpose.[59]

Griswold also argues that the ordinance does not serve a legitimate public purpose because it is inconsistent with the comprehensive plan. This argument also lacks merit. We have said that we will uphold the superior court's determination that an ordinance is consistent with a comprehensive plan unless the record compels a

---

[57] *See id.* at 1019.

[58] *See Cook Inlet Fisherman's Fund v. State, Dep't of Fish & Game*, 357 P.3d 789, 797 n.15 (Alaska 2015).

[59] *See Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014) (clarifying that non-movant's evidence "must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence").

finding that it is not.[60] This record does not compel such a finding. The City reasonably concluded that the ordinance would increase desired development in different zoning districts by easing the permitting process, which aligns with the comprehensive plan's goals of "[g]uid[ing] Homer's growth with a focus on increasing the supply and diversity of housing" and "support[ing] development of a variety of well-defined commercial/business districts." Moreover, even if this ordinance was inconsistent with the comprehensive plan, we have said that "nonconformance with a comprehensive plan does not necessarily render a zoning action illegal."[61] Consistency with a comprehensive plan can help to inform a court's inquiry, but the central question is still whether the ordinance has a legitimate purpose.[62] Griswold failed to meet his burden to set forth specific facts to contradict the City's demonstration of a legitimate government purpose, so his due process argument fails.

### 2. The superior court did not err in holding the ordinance is enforceable and not vague.

Griswold's second substantive claim is that the ordinance "lacks the attributes of an enforceable law." He invokes no legal basis for this claim in his briefing on appeal, and we could dispose of his argument on that basis alone.[63] But the argument also fails on the merits. Before the superior court, Griswold pointed to

---

**60** *Griswold*, 925 P.2d at 1021 (stating that although evidence presented "would permit a finding that the [c]ity [c]ouncil believed" its amendment was incompatible with the comprehensive plan, this did not "compel a finding" of incompatibility (emphasis omitted)).

**61** *Id.*

**62** *Id.* at 1019, 1021.

**63** *See Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001) ("[I]ssues not briefed or only cursorily briefed are considered waived."); *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 993 P.2d 1018, 1021-22 (Alaska 1999) (noting that self-represented litigants are obliged "to brief the issues [they] raise[]").

AS 29.26.110(a)(4), which requires that ballot initiatives be "enforceable as matter of law." But we agree with the superior court that AS 29.26.110(a)(4) does not apply to ordinances passed by legislation, and so is irrelevant here.[64]

Griswold also invoked due process in his briefing before the superior court, arguing that the ordinance was "void-for-vagueness."[65] But we agree with the superior court that Griswold failed to identify facts suggesting that the ordinance is vague. We presume that duly enacted municipal ordinances are constitutional, and we construe them to avoid unconstitutionality to the extent possible.[66] This ordinance is not difficult to understand in the context of the larger zoning code, and Griswold's arguments to the contrary rest mainly on his policy disagreements with the ordinance or minor inconsistencies in word choice. None of these criticisms establishes or even suggests that the ordinance is unconstitutionally vague.[67]

## C. Attorney's Fees

Griswold's final claims relate to the superior court's attorney's fee award. The court awarded the City $8,748.70, which amounted to 20% of its total attorney's fees. Griswold raises four arguments regarding the attorney's fee award, all of which fail.

---

[64] AS 29.26.110 (governing applications for petitions for ballot initiatives or referendums).

[65] *See Haggblom v. City of Dillingham*, 191 P.3d 991, 997 (Alaska 2008) (noting laws can be unconstitutionally vague if they do not give adequate notice of prohibited conduct).

[66] *Id.* (citing *Treacy v. Mun. of Anchorage*, 91 P.3d 252, 260 (Alaska 2004)).

[67] *See Treacy*, 91 P.3d at 260 (noting that "[c]ourts should construe enactments to avoid a finding of unconstitutionality," particularly in facial challenges).

### 1. The superior court did not abuse its discretion in finding that the City was the prevailing party.

Griswold first challenges the superior court's determination that the City was the prevailing party for the purposes of the attorney's fee award. We hold that the superior court did not abuse its discretion.

In cases resolved without trial and in which the prevailing party recovers no money judgment, Alaska Civil Rule 82(b)(2) provides that the court shall award the prevailing party 20% of its actual attorney's fees.[68] Griswold asserts that he should be considered the prevailing party because in 2023 the city rescinded some of the "cornerstone" provisions of the ordinance he challenges here. But we have said that the prevailing party is the one "who has successfully prosecuted or defended against the action, the one who is successful on the 'main issue' of the action and 'in whose favor the decision or verdict is rendered and the judgment entered.' "[69] Here, the superior court granted summary judgment in the City's favor on every issue. Therefore the City was clearly the prevailing party.[70]

### 2. The superior court did not err in finding that Griswold was not a constitutional litigant.

Griswold's second argument is that he should not have to pay attorney's fees because he is a constitutional litigant. This argument lacks merit.

Courts are generally prohibited from awarding attorney's fees against non-prevailing parties who bring constitutional claims, so long as the claims are neither

---

[68]     Alaska R. Civ. P. 82(b)(2).

[69]     *Meidinger v. Koniag, Inc.*, 31 P.3d 77, 88 (Alaska 2001) (quoting *Day v. Moore*, 771 P.2d 436, 437 (Alaska 1989)).

[70]     *See Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1147 (Alaska 2007) (upholding superior court's determination that defendants were prevailing party because superior court granted summary judgment in their favor).

frivolous nor economically motivated.[71] In reviewing de novo a superior court's constitutional litigant determination, we begin by determining whether each claim in the plaintiff's complaints "clearly concerned protection of constitutional rights,"[72] and then we examine whether each constitutional claim was frivolous.[73]

Griswold argues first that *all* of his claims "pertain[ed] to . . . due process issues." But this is contradicted by the record, which shows that five of his claims alleged violations of the city code. Another claim alleges vaguely that the ordinance "lacks the attributes of an enforceable law," which we agree with the superior court does not clearly raise a constitutional issue. The superior court rightly concluded that only two of the counts in Griswold's amended complaint — those related to due process — were constitutional in nature.

Griswold argues next that the superior court erred in determining that his due process claims were frivolous. We disagree. We have said that claims that are "far-fetched" and "completely without merit" are frivolous.[74] Griswold's due process arguments are both far-fetched and without merit. He has raised only conclusory allegations that the City lacked a legitimate public purpose. He also raised numerous policy arguments that do nothing to meet his evidentiary burden. He set forth no specific facts to contradict the City's showing of a legitimate purpose.[75] Griswold's

---

[71]     AS 09.60.010(c)(2).

[72]     *Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 539 (Alaska 2015).

[73]     *Pruitt v. State*, 526 P.3d 136, 141-42 (Alaska 2023).

[74]     *Griswold v. City of Homer*, 556 P.3d 252, 275-76 (Alaska 2024).

[75]     *See Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014) (explaining that non-movant's evidence "must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence").

showing is so far from meeting his burden regarding his constitutional claims that those claims are frivolous. He thus is not shielded from an award of attorney's fees.[76]

**3. The superior court did not abuse its discretion in declining to reduce the attorney's fee award.**

Griswold next argues that the superior court should have reduced the default 20% attorney's fee award under Alaska Civil Rule 82(b)(3). This argument also fails.

Alaska Civil Rule 82(b)(3) provides that a court may adjust the default 20% prevailing party award if it determines that a variation is warranted based on considerations such as the complexity of the litigation and the extent to which the award may deter similarly situated litigants.[77] Griswold argues that these factors mandate a reduced award in this case.

Generally, the "[a]pplication of Rule 82(b)(3) factors is discretionary, not mandatory,"[78] and we treat attorney's fee awards as "presumptively correct."[79] The party challenging an award bears a heavy burden of showing that the award should be set aside for "compelling reasons."[80]

Griswold fails to meet that burden. The superior court expressly discussed all the factors Griswold raises on appeal, and we see no abuse of discretion in any of its reasoning. Griswold's argument that the case was not complex is belied by Griswold's

---

[76] *See Griswold*, 556 P.3d at 276 (holding "[f]ar-fetched argument[s are] frivolous").

[77] Alaska R. Civ. P. 82(b)(3).

[78] *Greene v. Tinker*, 332 P.3d 21, 41 (Alaska 2014) (alteration in original) (quoting *Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008)).

[79] *Id.*

[80] *Dickson v. State, Dep't of Nat. Res.*, 433 P.3d 1075, 1089 (Alaska 2018) (remanding attorney's fee award based on "sheer size of the award" and "unusual evidence that the State selected and devoted resources" to case in hope of setting precedent).

numerous and lengthy motions over the course of this lawsuit. His argument that the City's expenses were "exorbitant" is conclusory and unsupported by the record, as is his assertion that the City incurred fees in order to dissuade future zoning challenges.[81] And his argument that this 20% award will deter similarly situated litigants is also unpersuasive.[82] The superior court did not abuse its discretion in declining to reduce the attorney's fee award.

### 4. The superior court did not abuse its discretion in relying on the City's redacted invoices.

Griswold's final argument is that the superior court improperly relied on the City's redacted invoices in determining the attorney's fee award. We disagree.

When a prevailing party requests attorney's fees, it must submit "accurate records of the hours expended and a brief description of the services reflected by those hours."[83] In support of its motion for attorney's fees, the City submitted to the superior court 28 pages of billing records with redactions that it argued were justified by "protections offered by the attorney-client privilege and work-product doctrine." The superior court found those redacted invoices "provide[d] the reader with a good understanding of the billing in this case" for the purposes of awarding attorney's fees.

---

[81] We also note that the superior court is "uniquely suited" to assess the reasonableness of a party's use of attorneys because of its "greater knowledge of the case." *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 332 P.3d 554, 561 (Alaska 2014) (quoting *Valdez Fisheries Dev. Ass'n v. Froines*, 217 P.3d 830, 833 (Alaska 2009)).

[82] *See, e.g.*, *Borer v. Eyak Corp.*, 507 P.3d 49, 64 (Alaska 2022) ("We are not persuaded that the 20% fee award here, totaling $17,780, was 'so onerous' that it would deter similarly situated litigants from bringing meritorious claims against a corporation.").

[83] *Hayes v. Xerox Corp.*, 718 P.2d 929, 939 (Alaska 1986).

We have held that redacted billings are sufficient to support an attorney's fee award where they "do[] not materially interfere with an understanding of the services performed."[84]

Griswold argues that the City's redactions prevented the superior court from assessing the City's requested fee award. But we are not persuaded. The invoices break down the work performed by date, hours spent, and the attorney who performed the work. Although some entries are brief and inexact, each entry contains at least a brief description of the professional services rendered. Overall, the redactions do not materially interfere with an understanding of the work performed and hours expended by the City's attorneys, or with the court's ability to analyze the reasonableness of the time spent and work done on the case. We thus conclude that the superior court did not abuse its discretion in relying on the invoices.[85]

## V.    CONCLUSION

We AFFIRM the superior court's decision on the merits. We also AFFIRM the superior court's attorney's fee award.

---

[84]    *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 399 (Alaska 1994) (upholding attorney's fee award based on 190 pages of original billings with names and subjects redacted).

[85]    The superior court also did not err in finding that because redacted invoices were sufficient to assess attorney's fees, Griswold's motion for in camera review was moot.